UNITED STATES of America,
Plaintiff-Appellee,

v.

Ada Dean CURRY, Sam Hemingway, Samuel M. McCollum, Jr., Ruth Hemingway, Clayton Joseph, Eva Joseph, Charlie Paul Lawson, Alvin Holmes, Lula Mae Holmes, and Rosetta Perkins, Defendants-Appellants.

No. 75–2148.

United States Court of Appeals,
Fifth Circuit.

April 21, 1976.

Henry Lee Adams, Jr., Jacksonville, Fla. (court-appointed), for Ada Dean Curry.

Thomas A. Larkin, Jacksonville, Fla., for other defendants-appellants.

John L. Briggs, U. S. Atty., Ernest D. Mueller, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, TUTTLE and GEE, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal by ten defendants from a judgment of conviction on one count of violating 18 U.S.C. § 1955 by operating an illegal gambling business:

> "Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both." 18 U.S.C. § 1955(a).

The business must violate a state or local law, must involve at least five persons, and must either operate continuously for at least 30 days or have a gross revenue of $2,000 in a single day. 18 U.S.C. § 1955(b).

At approximately 12:30 A.M. on February 13, 1974, agents of the Federal Bureau of Investigation executed search warrants that had been issued by the United States Magistrate on February 11, 1974, on the residence of each of the appellants. On February 25, 1974, a one-count indictment naming each of the appellants and charging a violation of 18 U.S.C. § 1955 was returned. Each of the appellants entered a plea of "not guilty." Each also filed a motion to suppress the evidence seized in these searches. The district court ruled on these motions on February 27, 1975; on March 19, 1975 the court entered a memorandum order explaining its rulings. All appellants had complained that there was no reasonable cause for a nighttime search but the district court found that there was reasonable cause and declined to suppress the evidence on these grounds. As to three of the appellants, Ada Dean Curry, Samuel Melvin McCollum, Jr., and Rosetta Perkins, however, the court did suppress the evidence seized on the grounds that probable cause to issue the warrants as to them had not existed. The motions of six of the appellants were denied, and that of Charles Paul Lawson was held to be moot since nothing was seized as a result of the search of his residence. All ten appellants were then tried before a jury. The jury returned verdicts of guilty as to each on March 25, 1975. All appellants appeal from the verdict; six appeal from the denial of their motions to suppress.

■ The search warrants complained of permitted their execution "any time during the day or night;" the agents, as stated above, chose to execute them at approximately 12:30 A.M. Appellants contend that this violates Fed.R.Crim.P. 41(c) which states:

> " . . . The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorized its execution at times other than daytime."

The "reasonable cause" presented to the magistrate in this case was that the suspected sellers in the alleged illegal gambling operation delivered their betting records to appellant Sam Hemingway's place of business, the Three-Spot, after 11:00 P.M. on Tuesdays. The magistrate decided that this sufficed as reasonable cause to search late on Tuesday night or early Wednesday morning, since after that time the records could be moved or secreted. The government further pointed out that the searches of the sellers' residences necessarily had to be simultaneous with that of the Three-Spot in order to prevent word of that search from spreading, alerting the other suspects. The district court approved the magistrate's finding that this constituted "reasonable cause" for a nighttime search, and we affirm that decision.

■ Appellants contend that the requirement that "reasonable cause" must be shown to justify a nighttime search under a warrant means that some such substantial showing be made for the need for acting on such warrant at night. Appellant would equate this requirement with the requirement for a showing of probable cause for the issuance of the warrant. Here, of course, probable cause must be shown for the issuance of the warrant, but beyond that the only requirement is that there be cause for carrying on the unusual nighttime arrest or search that, upon showing made, convinces the magistrate that it is reasonable. Finding that the evidence before the magistrate here met this re-

quirement, we do not consider it necessary or appropriate to attempt to delineate the precise boundaries that are covered by this language in the Rule.

■ One appellant, Ada Dean Curry, attacks her conviction on the ground that there was insufficient evidence from which the jury could find her guilty beyond a reasonable doubt. The government relies on the testimony of an admitted seller, Nettie Jordan, the presence of Curry's name in Jordan's records, and the testimony of an expert witness, FBI agent R. P. Harker. It is to be borne in mind that the placing of a bet or "buying" a bet, is not a violation of this statute. During its direct examination of Nettie Jordan, the prosecutor established that she was a *seller* and then asked if she ever *bought* numbers from other sellers. She said that she did. She was then asked if she had ever bought from certain individuals; as to the first five names mentioned, she answered that she had. Then the following exchange occurred:

"Q. How about Ada Dean Curry?

A. Yes.

Q. You did from Ada Dean Curry?

A. She *bought* some from *me*.

Q. She bought them from you?

A. She *bought* them from *me*."

(Emphasis added).

On cross-examination, Curry's counsel questioned Nettie Jordan on her previous testimony:

"Mr. Adams: Mrs. Jordan, I think you testified that Mrs. Curry used to make bets with you? Ada Dean used to call you and make bets with you; is that correct?

Mr. Mueller: Your Honor, I do not think that is what she said.

The Court: If it is not, she can take care of herself.

The Witness: What did you say?

The Court: He wants to know whether or not Ada Dean Curry placed bets with you.

The Witness: She *got* some *from me*, but I don't know who she got them for, but gets them for herself. A lot of them sent by for things they wanted, but I don't know who for.

By Mr. Adams: You said she never *sold you* any numbers?

A: No."

(Emphasis added).

That is the sum of Nettie Jordan's testimony against Ada Dean Curry. It is, needless to say, highly ambiguous. We construe Jordan's answer to be: "No, Curry never sold me any numbers." The government argues that Ms. Jordan's testimony is sufficiently buttressed by the appearance of Curry's name, followed by notations, on Nettie Jordan's records which were put into evidence; and by the testimony of its expert witness to take her case to the jury.

The records and the expert witness' testimony were offered to establish that Curry was a *seller* by showing that the notations proved she was a seller working for Jordan, or that she accepted lay-off bets from Nettie Jordan. The expert witness, Mr. Harker, testified that a seller in an operation such as this will establish a limit on the number of bets he will accept on a particular number. Sometimes, however, the seller may exceed this limit. This could happen, according to Harker, when a seller did not want to turn down regular customers. In the event that the seller does exceed the limit, he has two choices; to simply hold the excess himself, or to sell it, in what is called a lay-off, to another seller. Thus, the government argues that if it could establish that Ada Dean Curry took lay-off bets from Nettie Jordan, this would prove that Ada Dean Curry was a seller.

The problem with this approach is that Harker was never asked to comment on notations under Curry's name. He did state that from perusing Jordan's records he could "see that several of the sections on these pages are necessarily sellers themselves," but he did not identify the sections or the persons. The fact that Curry's name appeared in Jordan's records 25 times between August 29, 1973 and February 13, 1974, and that this was more often than any other name appeared, does not prove that she was engaged in anything more than bet-

ting, and betting is not a violation of the statute. 18 U.S.C. § 1955. Thus, we find that the evidence is insufficient to sustain the conviction of Ada Dean Curry. So far as this record goes she was nothing more than a bettor, buying bets from Ms. Jordan.

We have considered the other contentions of the remaining nine appellants and find them to be without merit. The convictions of Sam Hemingway, Samuel H. McCollum, Jr., Ruth Hemingway, Clayton Joseph, Eva Joseph, Charlie Paul Lawson, Alvin Holmes, Lula Mae Holmes, and Rosetta Perkins are AFFIRMED. The conviction of Ada Dean Curry is REVERSED.