707 P.2d 493

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Steven Jack HOLMAN,
Defendant-Appellant.**

Nos. 14243, 14646.

Court of Appeals of Idaho.

Oct. 2, 1985.

Steven C. Verby, Sandpoint, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

These consolidated appeals arise from two related burglary prosecutions. In No. 14243, Steven Jack Holman appeals from a judgment of conviction for burglarizing the Moyie Cash Store at Moyie Springs, Idaho. In No. 14646, Holman appeals, by certification, from an order denying his motion to suppress evidence relating to an alleged burglary of the Hardy Boys Building Supply near Moyie Springs. Holman contends in both cases that evidence was seized during an unlawful search. He also argues that the jury was improperly instructed, and that other errors occurred, in the Moyie store case. For reasons explained below,

we vacate the judgment of conviction in the Moyie store case and remand for a new trial. In the Hardy Boys case we affirm, as modified, the order refusing to suppress evidence.

## I

We begin with the search-and-seizure issue common to both cases. While investigating several burglaries, including those at issue here, the Boundary County Sheriff's Office received an anonymous tip that a person known as "Fat Jack" recently had sold stolen firearms in Montana. Upon inquiry, the sheriff found that a shotgun stolen from a Boundary County resident, and a power saw corresponding to a model reported stolen from the Hardy Boys store, had been sold at a pawn shop in Missoula, Montana. The pawn shop proprietor noted the name, physical description, date of birth and social security number shown on a driver's license exhibited by the seller. The name was Steven Jack Holman. The proprietor also observed the seller driving a white pickup truck with a camper shell. This truck was of interest to the Boundary County Sheriff because a similar vehicle had been observed near the Moyie store when it was burglarized. Tire tracks found at the Moyie store resembled those found at the scene of yet another burglary in the county.

The sheriff sent a reserve deputy, an employee in the county assessor's office, to the Bonner Lake Resort, where Holman was thought to reside. The deputy saw the white truck and learned that Holman resided with the resort operator in a mobile home on the premises. He also met Holman, who was introduced as "Fat Jack" and who matched the description earlier obtained.

The sheriff presented this information to a magistrate and obtained a warrant to search the resort for merchandise reported stolen. During the search, items allegedly taken from the Moyie store were found in an outbuilding, variously described by witnesses as a "cabin" or an "apartment," on the premises. Items allegedly taken from the Hardy Boys store were found in the mobile home. Additional evidence was found elsewhere on the resort grounds and in Holman's truck. However, evidence in the truck was suppressed by the district judge because the truck was held to be outside the scope of the warrant. The state does not challenge that ruling in this appeal.

## A

In the Moyie store case, Holman unsuccessfully sought an order suppressing all items found in the "cabin." He contended that the warrant was defective and that the search was improperly conducted. As explained more fully in Part I–B below, the district judge upheld the warrant and the search. But he also ruled, in any event, that Holman lacked "standing" to challenge the search of the "cabin." We deem this ruling to be dispositive as far as the Moyie store case is concerned; and we agree, in substance, with the court's analysis.

The fourth amendment, and its analogue in article 1, § 17, of the Idaho Constitution, are not ubiquitous. They do not apply to all searches or seizures. In *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Supreme Court held that the scope of the fourth amendment protection is determined by the privacy interests at stake. Justice Harlan, in a concurring opinion later adopted by the full Court in *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), articulated the familiar dual test for determining whether an accused person's fourth amendment rights have been implicated by a search. The initial inquiry is whether the individual entertained a genuine expectation of privacy where the search occurred. The second question is whether the accused's subjective expectation of privacy is one which society is willing to recogonize as objectively reasonable. *Katz v. United States*, 389 U.S. at 361, 88 S.Ct. at 516–17.

In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Su-

preme Court incorporated the privacy concept of *Katz* into a modern formulation of the right to challenge a search on fourth amendment grounds. The Court, dispensing with the traditional rules of "standing," held that a search may be challenged when a personal interest under the fourth amendment is asserted and a legitimate expectation of privacy is shown to exist in the area searched or in the items seized. In *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), the Court, applying the rationale of *Rakas*, abolished any "automatic" standing for persons charged with unlawful possession of contraband or stolen property. We think the same rule logically would apply to one charged with a burglary resulting in theft of such property. Because Holman enjoys no "automatic" standing, we turn to the question of privacy.

■■■ When moving to suppress evidence, an accused has the threshold burden of showing that his legitimate privacy interests have been infringed. In this case, Holman did not testify during the suppression hearing. Neither did he testify previously at the preliminary hearing. Consequently, the motion to suppress was submitted without testimony by the moving party regarding the scope and reasonableness of privacy interests asserted. We will presume, for the sake of discussion, that Holman entertained a subjective expectation of privacy in the "cabin." But that is not enough. The extrinsic facts must demonstrate the expectation to be legitimate— that is, to be objectively reasonable.

■■■ Here, the "cabin" was not owned, leased or occupied by Holman. The resort owner used the structure for general storage and he permitted Holman to put things there. There was no lock on the "cabin" door. Holman presented no evidence that he possessed any authority to restrict, or that he ever undertook to restrict, access to the "cabin." The "cabin" was located some fifty to seventy-five yards away from the mobile home where Holman and the resort owner lived. Upon these facts, the district court was not persuaded that an objectively reasonable privacy interest existed. Neither are we.

Holman has cited several cases holding that a legitimate privacy interest may exist in outbuildings or in premises shared with other occupants. *See generally* 1 W. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS § 20.3(b)(1) (2d ed. 1985). We find the cases to be distinguishable. Most of them involve structures or places physically occupied, for varying periods of time, by the defendants. Here, as noted, the "cabin" was not occupied by Holman or anyone else. Perhaps the closest case cited by Holman is *State v. Billups*, 118 Ariz. 124, 575 P.2d 323 (1978). There, property was seized from a locked shed situated about ten feet from the defendant's house. Although the defendant's sister owned the shed, a key was kept in the defendant's house. Thus, in that case the assertion of a legitimate privacy interest was supported by the elements of close proximity and controlled access. Those elements are conspicuously absent in the present case.

■■■ Holman further contends that even if he had no legitimate expectation of privacy in the "cabin," he did have such an expectation in a container where stolen items were found. We acknowledge that in some circumstances a reasonable privacy interest may attach to a repository for other personal property. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). But such circumstances are not present here. The "container" in this case, a Thermos cooler, was one of the items stolen from the Moyie store. Holman made no colorable showing that he had a legitimate right to possession of the cooler. Neither did the cooler exhibit any indicia of an asserted privacy interest. We conclude that no legitimate interest was infringed by the search of the "cabin" or by the seizure of the cooler and its contents. Because all evidence introduced at the Moyie store trial came from the "cabin," our fourth amendment inquiry in that case stops here.

## B

We now turn to the search-and-seizure issue as it relates to the Hardy Boys case. As noted, evidence pertinent to this case was found in the mobile home occupied by Holman and the resort owner. The district judge treated the living arrangement narrowly, confining Holman's occupancy to a single bedroom. Upon that basis he held that Holman had no reasonable expectation of privacy elsewhere in the mobile home. However, we do not believe the record in this case supports such a precise zoning of privacy interests within the trailer. We will presume, for the sake of discussion, that the search of the entire mobile home infringed upon a legitimate expectation of privacy and that it implicated Holman's fourth amendment rights.

### 1

■ Holman first argues that the warrant was issued without probable cause. The fourth amendment provides that "no warrant shall issue, but upon probable cause, supported by oath or affirmation." Similar language is found in article 1, § 17 of the Idaho Constitution. The information presented to the magistrate who issued the warrant has been summarized above. The test for reviewing the magistrate's action is whether he abused his discretion in finding that probable cause existed. *E.g., State v. Owens,* 101 Idaho 632, 619 P.2d 787 (1980). Our review encompasses the totality of circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Lang,* 105 Idaho 683, 672 P.2d 561 (1983). Considering all the evidence presented, including the tip corroborated in part by subsequent investigation, we hold that the magistrate did not abuse his discretion in finding probable cause.

### 2

Holman next contends that the evidence should be suppressed because the warrant improperly authorized a nighttime search. Holman relies on I.C. § 19–4411, which allows a nighttime search only upon a "positive" showing that the items to be seized are at the place to be searched. In contrast, I.C.R. 41(c) merely requires "reasonable cause" for the issuance of a nighttime warrant.

■ Our Supreme Court has given dominant effect to Rule 41(c). The Court has held that reasonable cause "should be the correct standard in analyzing future cases dealing with search warrants authorizing nighttime execution." *State v. Lewis,* 107 Idaho 616, 619, 691 P.2d 1231, 1234 (1984), *overruling State v. Lewis,* 106 Idaho 800, 683 P.2d 448 (Ct.App.1984), and *quoting from State v. Lindner,* 100 Idaho 37, 42 n.5, 592 P.2d 852, 857 n.5, (1979). In our view, I.C. § 19–4411 should not be disregarded; rather, "reasonable cause" under the rule should be supplemented and strengthened by a "positive" showing under the statute. *State v. Lewis, supra; State v. Fowler,* 106 Idaho 3, 674 P.2d 432 (Ct.App.1983). However, the Supreme Court has rejected our view and we must acknowledge that it is not the law. Accordingly, we are constrained to apply the "reasonable cause" standard alone.

■ It is, of course, one thing to say that the "reasonable cause" standard applies. It is quite another to say what it means. Our Supreme Court in *Lindner* has quoted with approval the following passages from decisions in other jurisdictions where counterparts to I.C.R. 41(c) exist:

[Under the federal rule] probable cause must be shown for the issuance of the warrant, but beyond that the only requirement is that there be cause for carrying on the unusual nighttime arrest or search that, upon showing made, convinces the magistrate that it is reasonable. Finding that the evidence before the magistrate here met this requirement, we do not consider it necessary or appropriate to attempt to delineate the precise boundaries that are covered by this language in the Rule.

*United States v. Curry,* 530 F.2d 636, 637–38 (5th Cir.1976).

[California] does not require a separate statement as to good cause for the serv-

388

ing of a warrant in the nighttime: if the affidavit, read in a common sense manner and as a whole reasonably supports the inference that the interests of justice are best served by the authorization of nighttime service, provision for such service in the warrant is proper. Absent an abuse of discretion, the magistrate's finding of a reasonable necessity of nighttime service will not be disturbed on appeal.

*People v. Mardian,* 47 Cal.App.3d 16, 35, 121 Cal.Rptr. 269, 281 (1975) (citations omitted). What these passages tell us is simply that when a magistrate reasonably feels a nighttime search would serve the ends of justice, his discretionary decision will not be disturbed on appeal. We may not agree with this standard of review, but we are constrained to apply it.

 In the present case, the state argues that the reserve deputy's visit to the Bonner Lake Resort, purportedly in his role as the county assessor's employee, gave rise to a "reasonable cause" for the nighttime search. The state's thesis is that the visit might have caused Holman to suspect that he was being investigated and might have induced him to dispose immediately of stolen property in his possession. There are no facts in the record to support or to refute this thesis. The record simply shows that the magistrate affirmatively authorized a nighttime search by circling the applicable language on the warrant and by writing his initials on it. Upon this record, applying the indulgent standard our Supreme Court has prescribed, we surmise that the magistrate found "reasonable cause." We cannot say that he abused his discretion in doing so.

3

 Finally, Holman asserts that the warrant was not drawn with sufficient particularity. He contends that the place to be searched was insufficiently identified. We disagree. A place is sufficiently described if it can be distinguished from neighboring properties. *E.g., State v. Carlson,* 101 Idaho 598, 618 P.2d 776

(1980). Here, the warrant specifically referred to the "[named owner's] residence at Bonner Lake Resort, outbuildings and grounds thereof, in Boundary County, Idaho...." Holman invites our attention to the absence of a legal or detailed physical description of the premises. We hold that such extraordinary detail is not required. Search warrants are not deeds or tax notices. They are not subject to technical drafting requirements. They should be interpreted in "a commonsense and realistic fashion." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965). Moreover, the issue now before us is limited to the search of the mobile home where Holman and the resort owner resided. That residence was identified in the warrant. The danger that someone else's residence might be searched by mistake was remote.

 Holman further asserts that the items to be seized were described with insufficient particularity. The warrant carried an appendix listing some twenty-four firearms and other items reported stolen. The other items were tools and knives, described as follows:

*Power Tools*[.] There was approx. $2,000 worth of power tools taken at the Hardy Boys Lumber Company in Bonners Ferry. This amount includes hammers, saws, axes, drill bits, planes, come alongs, and approx 30 Schrade knifes [sic]. The Moyie's store also had Schrade knifes [sic] taken in its burglary.

This description was inartful and could have been more detailed, particularly as to the tools. However, the fourth amendment does not mandate the best possible descriptions of items to be seized. It requires particularity sufficient to prevent "the seizure of one thing under a warrant describing another" and to prevent the exercise of "discretion [by] the officer executing the warrant." *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927).

 Here, the warrant did not direct a search for unidentified items under a generic heading of "stolen property." *Com-*

*pare, e.g., Bloom v. State*, 283 So.2d 134 (Fla.Dist.Ct.App.1973). Nor did it refer broadly to "evidence or instrumentalities of crime." Rather, it enumerated firearms with great particularity, it identified knives by brand name and it described the types of tools believed to be stolen. It was not an impermissibly general warrant.

 ■ Nevertheless, Holman argues that the sheriff and his deputies, when executing the warrant, gave it a general interpretation and seized property wholly unrelated to the items listed. However, when law enforcement officers exceed an otherwise valid warrant, the entire search ordinarily is not rendered invalid. Rather, the property unlawfully seized will be suppressed as evidence. *See, e.g., State v. Kelly*, 106 Idaho 268, 678 P.2d 60 (Ct.App. 1984), *cert. denied,* ── U.S. ──, 105 S.Ct. 296, 83 L.Ed.2d 231 (1984).

 Here, only five items were seized in the mobile home. They consisted of two "Schrade" knives—clearly within the warrant—together with a credit card, a camera and a calculator. The state argues that the latter three items were appropriately seized under the "plain view" doctrine. This doctrine permits a warrantless seizure if certain prerequisites are satisfied. First, an officer legitimately must be in a position to view the object. Second, it must be immediately apparent to the officer that the object may be evidence of a crime. Third, the officer must not have known previously that the object was located where he seized it. *See Texas v. Brown*, 460 U.S. 730, 737, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

 ■ With respect to the camera and the credit card, we hold the "plain view" doctrine to be applicable. Because the warrant was valid, the officers legitimately were in a position to observe these objects. It was immediately apparent that each item may have been evidence of a crime. The officer who testified at the suppression hearing stated that he seized the camera because it was on a stolen goods report from the Moyie store and that he seized the credit card because it did not bear Holman's name. There is no indication that the officers had prior knowledge of the location of these objects before seizing them.

 ■ However, the calculator fails the second of these tests. No connection to any crime was immediately apparent. In fact, the officer testified that he could not recall why he seized the calculator. Consequently, we hold that it should be suppressed as evidence. In all other respects we sustain the district judge's order denying Holman's motion to suppress.

## II

We now consider other issues raised in the Moyie store case. In this part of the opinion we hold that the judgment of conviction must be vacated and a new trial conducted. Guidance on remand, where appropriate, is provided.

### A

Holman argues that the district court erred by failing to give a requested instruction on circumstantial evidence. The text of the proffered instruction was as follows:

[A] finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion.

Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt.

This instruction was rejected because the judge believed it had been covered by other instructions generally discussing the state's burden of proving guilt beyond a reasonable doubt.

At the heart of this issue is a long-established fixture of Idaho law—the "reasonable hypothesis" instruction. In *State v. Holder,* 100 Idaho 129, 594 P.2d 639 (1979), our Supreme Court, citing several earlier decisions, declared that where the state's evidence is entirely circumstantial, the jury must be instructed to convict the defendant only if the circumstances are consistent with guilt, inconsistent with innocence, and incapable of explanation on any reasonable hypothesis other than guilt. *See also State v. Davis,* 69 Idaho 270, 206 P.2d 271 (1949); *State v. Hix,* 58 Idaho 730, 78 P.2d 1003 (1938); *State v. McLennan,* 40 Idaho 286, 231 P. 718 (1925); *State v. Marcoe,* 33 Idaho 284, 193 P. 80 (1920); *State v. Curry,* 103 Idaho 332, 647 P.2d 788 (Ct.App. 1982). *Compare State v. Paradis,* 106 Idaho 117, 120, 676 P.2d 31, 34 (1984) (instruction simply referring to exclusion of every "reasonable hypothesis" other than guilt satisfies the *Holder* requirement).

 As *Holder* and the other cases cited make clear, failure to give a "reasonable hypothesis" instruction, when warranted by the evidence, is reversible error. Here, the evidence of Holman's burglary of the Moyie store was wholly circumstantial. None of the trial court's instructions on reasonable doubt explicitly informed the jury that the evidence must exclude every "reasonable hypothesis" other than guilt. Consequently, the case law impels us to hold that the jury was not adequately instructed.

The state does not dispute the clear message of the case law. Rather, the state asks us—and ultimately may ask the Supreme Court—to reverse the trend of these cases. The state would have us hold that a "reasonable hypothesis" instruction violates the equal dignity of direct and circumstantial evidence, and that it constitutes an improper judicial comment upon the weight of the evidence. *See State v. Marren,* 17 Idaho 766, 107 P. 993 (1910).

The argument has been well presented by able counsel. Our Court can—and occasionally does—adopt new law in Idaho, subject to the Supreme Court's power of review. But we are not persuaded that a change is in order here. A "reasonable hypothesis" instruction imparts specific meaning to the concept of reasonable doubt, when applied to circumstantial evidence. It does not increase the state's burden of proof; it simply makes the burden clearer. This sharpened clarity does not strike us as inappropriate when the difference between conviction or acquittal turns upon the inferences a jury chooses to draw. Accordingly, we adhere to the existing rule of case law. We vacate the judgment of conviction and remand for a new trial.

### B

Because the judgment is vacated, we will examine the remaining issues only to the extent necessary for guidance on remand. We turn first to an evidentiary issue likely to arise at a new trial.

### 1

As mentioned previously, the district judge, in a ruling not challenged by the state, held that Holman's truck was outside the scope of the search warrant executed at the Bonner Lake Resort. The judge declared that the truck had been illegally seized and searched. While the truck was in the sheriff's custody, following the illegal seizure, a deputy showed it to several persons who claimed to have seen a white pickup near the Moyie store when the burglary occurred. These persons later were permitted to testify that the truck shown to them appeared to be the same one they had observed near the store. Holman argues that such testimony should have been excluded because it was the "fruit of the poisonous tree"—that is, it was secondary evidence derived through the illegal seizure of the truck. Although it is not clear whether this precise argument was made to the district judge, the point is one which should be addressed in connection with the remand.

 It is beyond cavil that the exclusionary remedy for an illegal search or seizure extends to its indirect products.

As Justice Holmes stated in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920):

> [T]he essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the [courts] but that it shall not be used at all.

Similarly, in *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963), the Supreme Court has said, "The exclusionary prohibition extends as well to the indirect as the direct products of [illegal] invasions." More recently, in *United States v. Crews*, 445 U.S. 463, 470, 100 S.Ct. 1244, 1249, 63 L.Ed.2d 537 (1980), the Court has stated, "The exclusionary sanction applies to any 'fruits' of a constitutional violation...." Although Judge Swanstrom's dissenting opinion, *infra*, suggests that the exclusionary sanction extends only to evidence that is, itself, subject to fourth amendment protection, the case law does not appear to establish such a limitation.

In its argument, the state concedes the scope of the exclusionary sanction but it urges three exceptions to the rule: attenuation, independent source and inevitable discovery. The doctrine of attenuation, announced in *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), has been explained and applied by the Supreme Court in *United States v. Crews*, *supra*. In *Crews*, police officers arrested the accused on a pretextual charge of truancy in order to obtain his photograph for identification by a witness to a suspected robbery. The accused was identified through this photograph. At trial, the witness also identified the accused in court, testifying that the identification was based upon her independent recollection of the robbery, not upon the intervening photograph. The Supreme Court held that although the initial identification was the product of an illegal seizure of the accused's person, the in-court identification was sufficiently remote to attenuate the taint.

However, the instant case is fundamentally different from *Crews*. There was no independent identification of the pickup truck during the trial. Rather, the witnesses in question simply recalled their prior identification of the vehicle while it was in the sheriff's custody. There was no alleviation of the taint. Indeed, the testimony embodied the taint. We hold the doctrine of attenuation to be inapposite.

The state's arguments concerning independent source and inevitable discovery are rather terse. These doctrines are interwoven into a single statement:

> It is untenable to suggest that, absent the unlawful seizure, the police would not have taken some action to obtain an eyewitness identification. It seems apparent that "in the normal course of the police investigation and absent the illegal conduct, the [identifications] would have been [obtained] anyway." The trial court properly admitted the identification under both the "independent source" and "inevitable discovery" exception to the exclusionary rule.

We believe the state's reliance upon the "independent source" doctrine is misplaced, in light of the record presently before us. This doctrine has been concisely stated by Justice Holmes:

> [Application of the exclusionary rule] does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it....

*Silverthorne Lumber Co. v. United States*, 251 U.S. at 392, 40 S.Ct. at 183. Here, the state has not yet established any actual, independent source of testimony identifying the truck and linking it to the Moyie store burglary.

The doctrine of "inevitable discovery" relates to hypothetical independent sources. It has been narrowly enunciated and applied by the United States Supreme Court. In *Nix v. Williams*, 467 U.S. 431,

104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the Court held that evidence concerning the location of a dead body would not be suppressed, even though the evidence had been obtained by improper questioning of the accused, because the police also had organized a thorough search of the area where the body lay and its eventual discovery was inevitable. In contrast, the record here discloses no such additional line of investigation by the sheriff. Rather, the state's position appears simply to be that if the sheriff had not seized the truck improperly, he would have obtained an untainted identification from the witnesses. But this shallow truism does not invoke the doctrine of "inevitable discovery." The doctrine "is not intended to swallow the exclusionary rule whole by substituting what the police should have done for what they really did." *State v. Cook,* 106 Idaho 209, 226, 677 P.2d 522, 539 (Ct.App.1984) (opinion expressing views of Burnett, J., joined by Walters, C.J.).

■■■ We conclude that the identification of the truck, while it was in the sheriff's custody, is tainted by the illegal seizure. Testimony concerning that identification should not be admitted at a new trial. This conclusion makes it unnecessary to address a separate but related contention, advanced by Holman, that the identification was procured in unduly suggestive circumstances. But our conclusion is a narrow one. It in no way prevents the witnesses in question from describing the vehicle they saw near the burglary scene, nor does it preclude testimony about any other identification made independently from the unlawful seizure. Neither does it bar the state from adducing competent evidence concerning the type of truck owned and operated by Holman. Upon such evidence the jury can make its own determination as to whether the truck observed at the burglary scene belonged to Holman.

### 2

In the remaining issues presented on appeal, Holman asserts that he was unfairly surprised at trial by a jury instruction on aiding and abetting, that he was denied a meaningful opportunity to assist his attorney in preparing for trial, and that he was deprived of an opportunity to call a witness who allegedly overheard another individual admit to perpetrating the Moyie store burglary. These issues may not arise, or may be significantly altered, upon remand. A second trial may cure the alleged problems of surprise and trial preparation. With respect to hearsay testimony of a third-party confession, Rule 804(b)(3) of the new Idaho Rules of Evidence (effective July 1, 1985) furnishes appropriate guidance to the trial court and counsel. Consequently, we deem it unnecessary to address these issues further.

In summary, the judgment of conviction in the Moyie store case, No. 14243, is vacated and the case is remanded for a new trial. In the Hardy Boys case, No. 14646, the order denying the suppression motion is modified to suppress the calculator; but in all other respects, the order is affirmed.

WALTERS, C.J., concurs.

SWANSTROM, Judge, dissenting in part.

I fully concur with the foregoing opinion except as to part II–B–1 wherein the majority holds that the testimony of witnesses who identified Holman's pickup at the sheriff's office should be suppressed. While the district court properly suppressed any "search" of the pickup, as being outside the warrant and therefore unreasonable, that suppression need not and should not be extended to exclude a view of the exterior. No person who operates a motor vehicle upon the public streets and highways can reasonably have an expectation of privacy concerning the exterior of the vehicle. The view of Holman's pickup by the witnesses at the sheriff's office could have occurred anywhere. I would not apply the exclusionary rule to evidence that lies wholly beyond the protective scope of the fourth amendment.

Moreover, as the majority candidly suggests, suppressing the identification made of the pickup at the sheriff's office really

accomplishes nothing. Essentially the same evidence can be introduced in a later trial in other ways. Therefore, the purpose of the exclusionary rule—to deter illegal police conduct by imposing sanctions—will not be served here. Effective deterrence has already been accomplished, however, by suppression of the physical evidence obtained in the search of the pickup. In such circumstances, I suggest courts should be extremely wary of applying a rule when the only real effect is to inhibit knowledgeable citizens with relevant evidence from testifying at trial. *Cf. United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978).

Finally, it should be pointed out that Holman never made the argument to the district court that the testimonial evidence should be suppressed because it was the product of an illegal seizure of the pickup. The district court, speaking to the ground urged by Holman for the suppression of this evidence, ruled that the "showup" of the pickup at the sheriff's office was not unduly suggestive. Holman has not shown this ruling to be erroneous and I would uphold it.