718 P.2d 1245

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Gerald R. COOTZ, Defendant-Appellant.**

**No. 14787.**

Court of Appeals of Idaho.

April 21, 1986.

Petition for Review Denied
June 18, 1986.

Stewart A. Morris, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Gerald Cootz was convicted of robbery, aggravated battery and possession of a firearm during commission of each crime. Cootz received sentences totaling a fixed thirty year prison term. From these convictions and sentences Cootz appeals. He alleges numerous errors which, for convenience, can be grouped into (1) suppression issues; (2) trial errors; and (3) illegal and excessive sentencing. We affirm the convictions and the sentences.

## I

We begin with the suppression issues. Cootz claims that evidence was illegally seized and cites as error the denial of his motion to suppress (1) money taken from his pocket; (2) hair fibers taken from his car; and (3) the contents of bags taken from the residence of a third party. He also contends his car was illegally seized.

On the evening of August 26, 1982, the Boisean Motel was robbed at gunpoint. Cash, including a $100 bill, was taken and the robber fled on foot. Just before the robbery, the manager of the motel observed a white sedan parked around back at a spot not normally used by the public or motel patrons. This car was gone shortly after the robbery. Gary Fost, an intern-officer candidate with the Boise Police Department, was on routine patrol in the vicinity. He observed a white sedan speed past him in the opposite direction. Fost turned around and followed, intending to cite the driver for speeding. The white sedan led Fost into a residential area where it came to a stop. The driver fled on foot. Fost gave chase. The suspect went over a fence. When Fost peered over the fence he was hit in the face by bird-shot fired from a pistol. The suspect returned to his car and drove away.

The next morning Jim Davis, Cootz's father-in-law, contacted the authorities. He told investigators that Cootz came to the Davis residence on the evening of the robbery, appeared excited and wanted to talk to his wife, who was then living with her parents. Davis said he and his wife overheard Cootz tell their daughter he was in trouble and had shot a policeman. Cootz finally left; but not before trying to give his wife some money and giving her and Mrs. Davis guns, ammunition, clothing and makeup to hide.

After receiving this information, investigators learned where Cootz worked. The police went there and observed a white sedan similar to the car witnesses had described as being used in the shooting. The officers learned that the car was registered to Cootz's wife. Detective Anderson obtained a warrant authorizing the detention of Cootz in order to procure identifying physical characteristics. As Cootz left work and approached his car, several police officers, with guns drawn, confronted him. He was searched, handcuffed and taken away. The officers took money from his pocket, including a $100 bill. His keys were also taken and his car seized. Cootz was taken to the police department, given his Miranda rights and interrogated by Detective Killeen. Approximately two hours after Cootz was detained he was formally

arrested. Officers then went to the Davis residence. Mr. Davis signed a consent to search form and led the officers to a dog kennel where the items given to his wife and daughter were found. Some of these items were contained in two closed brown paper bags. These bags were opened and the contents seized.

Initially Cootz attacks the validity of the detention warrant and the officers' actions in executing it. Cootz asserts that the detention warrant was a sham. The affidavit of Detective Anderson is said to contain false and unsupported information, and to have been a deception upon the issuing magistrate. Alternatively, Cootz argues that even if the warrant was valid the search of his pockets and the seizure of his car exceeded the scope of the warrant requiring suppression of the resulting evidence. The state submits that the use of the detention warrant was a guise to protect the Davises. The officers hoped that identification evidence could be obtained to connect Cootz to the crime so that the information provided by Mr. Davis could remain anonymous for as long as possible. The state asserts that Cootz, in fact, was arrested with probable cause when he left his place of employment and that the search of his pockets was incident to that arrest.

The warrant was issued pursuant to I.C. § 19–625 which authorizes the temporary detention of a person to obtain physical evidence such as fingerprints and photographs. To obtain the warrant the police must show that

(A) Probable cause for belief that a specifically described criminal offense which is a felony has been committed.

(B) Reasonable grounds exist, which may or may not amount to probable cause, to believe that the identified or particularly described individual committed the criminal offense.

(C) Procurement of evidence of identifying physical characteristics from the identified or particularly described indi-

vidual may contribute to the identification of the individual who committed such offense.

(D) Such evidence cannot otherwise be obtained by the investigating officer.

This statute authorizes a form of "Terry stop," a limited intrusion into a person's privacy on grounds which may not amount to probable cause for arrest. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Hobson,* 95 Idaho 920, 523 P.2d 523 (1974). When an investigative *Terry* detention exceeds the limited purposes for which it is allowed, the permissibility of the intrusion is determined by the same standard as a warrantless arrest. *State v. Cook,* 106 Idaho 209, 677 P.2d 522 (Ct.App.1984); *People v. Tooker,* 198 Colo. 496, 601 P.2d 1388 (1979). We believe the same is true when the authority granted by a detention warrant is exceeded, as it was in this case. A police officer may make a warrantless arrest "[w]hen a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it." I.C. § 19–603(3). "Reasonable or probable cause has been defined as information that 'would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that such person is guilty.'" *State v. Alger,* 100 Idaho 675, 677, 603 P.2d 1009, 1011 (1979).

We need not decide the validity of the warrant because we agree with the state that the detention of Cootz amounted to a valid warrantless arrest. The element of custody is essential to an arrest. There must be "some action or intent evidencing police custody before an arrest occurs." *State v. Hobson,* 95 Idaho at 923, 523 P.2d at 526. There is no doubt that the "actions" in detaining Cootz evidenced police custody consistent with an arrest. Even if the detention warrant was invalid, it, like an arrest warrant that turns out to be defective, cannot invalidate an arrest where the police possess probable cause to make the arrest. *Giordenello v. United*

*States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958) (in event of new trial the government could try to justify arrest without relying on the warrant); *United States v. Rose,* 541 F.2d 750 (8th Cir.1976); *Soolook v. State,* 447 P.2d 55 (Alaska, 1968). It is clear that the officers had reasonable cause to arrest Cootz at the time he was detained. They also had authority, under I.C. § 19–603(3), to make a warrantless arrest. Thus, the arrest was valid and the roll of money found in Cootz's pocket was lawfully acquired in a search incident to that arrest.

■ Cootz submits that the protection of the Davis family was merely an afterthought by the police, justifying their decision to obtain a detention warrant rather than simply to arrest Cootz. He points to testimony of Detective Anderson that indicates doubt as to probable cause to arrest Cootz at the time. Whether an arrest has occurred is determined from the objective evidence and not by the subjective belief of the arrestee or of the arresting officers. *State v. Winegar,* 147 Ariz. 440, 711 P.2d 579 (1985); *United States v. McCambridge,* 551 F.2d 865 (1st Cir.1977). Since the objective evidence shows that probable cause did exist to arrest Cootz and that an arrest did in fact occur at the time Cootz was initially confronted, Detective Anderson's subjective doubts concerning probable cause are not material. *Klingler v. United States,* 409 F.2d 299 (8th Cir.1969); *State v. Vaughn,* 12 Ariz.App. 442, 471 P.2d 744 (1970).

Cootz next raises suppression issues regarding his car. When Cootz was detained his car was seized and impounded. Officer McPheters measured the tires and stance of the car. This information was used at trial to link Cootz's car to skid marks found near the scene of the shooting. A few days later, a search warrant was obtained and hair fibers were found in the car. On appeal, Cootz asserts: (1) the officers had no authority to seize his car; (2) since the seizure was illegal, the measurements tak-

en before the warrant was obtained should have been suppressed; and (3) the hair fibers found in the car should have been suppressed because the warrant was invalid.

■ We find no violation of Cootz's constitutional rights from the seizure of his car. Because of the inherent mobility of an automobile, an exception to the warrant requirement has developed allowing the warrantless search of a car when officers have probable cause to conduct the search. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In this case the police had probable cause to search the car. At that point there is "no difference between on the one hand seizing and holding a car before presenting the probable cause issue to the magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers v. Maroney,* 399 U.S. at 52, 90 S.Ct. at 1981. Accordingly, we find no error in admitting evidence concerning the measurements taken after the automobile was seized.

With respect to the hair fibers, we have noted that a warrant was obtained. Cootz alleges that the search warrant was defective because it was obtained through the use of false and misleading information. Even if we assume, solely for the sake of discussion, that the warrant was required, we find that it was properly issued. Having reviewed the affidavit of Detective Killeen, we conclude that even without the alleged objectable material the affidavit provided sufficient basis for finding probable cause to issue the warrant. Therefore, suppression of items inside the car was properly denied.

Next Cootz claims that items seized at the Davis residence should have been suppressed. Mr. Davis signed a consent to search and led officers to a dog kennel

where they located two guns, a coat and pants, and two brown paper bags. Various makeup items were found inside the bags. Witnesses who saw the robbery said the clothes were similar to those worn by the robber. Another witness who said she saw a man wearing a fake beard at a restaurant near the Boisean Motel just before the robbery testified that the man wore similar clothing.

■■■ The search of the dog kennel was reasonable. Mr. Davis gave written consent to the search. *State v. Gonzales*, 92 Idaho 152, 438 P.2d 897 (1968). Cootz challenges the validity of the warrantless search of the brown paper bags found in the dog kennel. He argues that the police were well aware that the bags belonged to him and that no exigency existed to search them. The district court ruled that Cootz had no objectively reasonable expectation of privacy in the contents of the bags after turning them over to a third party. It is Cootz's position that he did not abandon the bags by giving them to his wife, and that he maintained a reasonable expectation of privacy in the bags since they were closed.

In *State v. Holman*, 109 Idaho 382, 385, 707 P.2d 493, 496 (Ct.App.1985), we noted that the fourth amendment and article I, section 17 of the Idaho Constitution do not apply to all searches.

In *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Supreme Court held that the scope of the fourth amendment protection is determined by the privacy interests at stake. Justice Harlan, in a concurring opinion later adopted by the full Court in *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), articulated the familiar dual test for determining whether an accused person's fourth amendment rights have been implicated by a search. The initial inquiry is whether the individual entertained a genuine expectation of privacy where the search occurred. The second question is whether the accused's

subjective expectation of privacy is one which society is willing to recognize as objectively reasonable. *Katz v. United States*, 389 U.S. at 361, 88 S.Ct. at 516–17.

Cootz cites *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), to argue that delivery of the bags to a third person does not eliminate his expectation of privacy. In that case mail containing pornographic films was misdelivered to, and opened by a third party. A subsequent warrantless search was held to violate the fourth amendment when officers went beyond the private search and opened containers inside the already opened package. That case is distinguishable because it involves mail. Society has long recognized as legitimate the privacy interest in one's mail. We find no such objective privacy interest in the bags involved in this case. We find this case is more akin to *United States v. Hershenow*, 680 F.2d 847 (1st Cir.1982). In that case postal authorities were seeking patient records kept by a doctor suspected of mail fraud. The doctor, shortly after execution of a search warrant for his office, gave a sealed box of records to a third party for safe keeping in a barn. A postal inspector was shown the box of records by a person having access to the barn and he examined its contents which were later used to convict the doctor. On appeal, the federal court stated at 680 F.2d 856:

On balance, we find that there was no objective, justifiable expectation of privacy. One cannot insulate himself against the discovery of incriminating material by removing it from his own premises, where there is a likelihood of a warrant-authorized search, and hiding it in a place as unoriented to security as a barn in which one has no legal interest or even access rights.

We hold that Cootz had no objectively reasonable expectation of privacy in the bags and that it was not improper for the officers to look inside them without a war-

rant. In *U.S. v. Goshorn,* 628 F.2d 697 (1st Cir.1980), the First Circuit refused to apply a presumption that a warrantless search of a paper bag violates the fourth amendment. That these "containers" are often used as a repository of possessions does not lead to the conclusion that the contents are inevitably associated with an expectation of privacy. *Id.* Even though Cootz maintained a proprietary interest in the bags, we do not believe he can claim a reasonable expectation of privacy in them. Cootz had no control over the Davises' home and he relinquished control over the bags. At least three other people had access to them. He did not meet his burden of showing an objectively reasonable expectation of privacy. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *State v. Holman, supra.* We agree with the First Circuit that "a legitimate expectation of privacy means more than a subjective expectation of keeping incriminating evidence hidden." *United States v. Hershenow,* 680 F.2d at 855.

■ One other pretrial issue deserves comment. After being detained, Cootz was questioned. During the interrogation, Cootz asked for an attorney. Detective Killeen informed Cootz that he could have an attorney and that the request meant no more questioning, but that Cootz could ask questions and initiate a conversation if he wanted. The questioning then continued. Later in the conversation, Killeen indicated that since Cootz was being held under the detention warrant, and not under arrest, he was not entitled to an attorney. The detention warrant statute plainly states, contrary to Killeen's statement, that the person detained is entitled to counsel. I.C. § 19–625(H). Even without the statute, when a suspect undergoing custodial interrogation invokes his right to counsel, questioning must stop, and it may not be continued until the suspect reinitiates the dialogue or an attorney is made available. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 368 (1981); *State v. Blevins,* 108 Idaho 239, 697 P.2d 1253 (Ct. App.1985). We are unimpressed by Killeen's attempt to coax Cootz into reinitiating the dialogue, thereby circumventing the request for an attorney. However, statements made by Cootz after he requested an attorney did not contribute to the investigation. Violation of Cootz's statutory and sixth amendment rights simply did not lead to suppressible evidence.

## II

We next address Cootz's claim that errors at trial denied him a fair trial. These issues are presented in three areas: (1) the opening statement made by the prosecutor; (2) admission of testimony connecting Cootz's car to skid marks found near the scene of the shooting; and (3) admission and use of evidence concerning Cootz's escape from prison. Cootz also asserts that the evidence was insufficient to sustain a conviction for use of a firearm in the commission of the robbery.

■ Cootz argues that the prosecutor in his opening statement misrepresented the strength of the state's scientific evidence. This argument is without merit. The prosecutor did overstate the value of the evidence, but moments later qualified the statement. The state's expert witnesses testified concerning the evidence. After that testimony, any illusions which may have been created by the prosecutor's introduction of the evidence were simply dispelled by the clear nature of the evidence as revealed in direct and cross-examination.

■ Cootz next alleges that testimony connecting his car to the skid marks left at the scene of the shooting should not have been admitted. Officer McPheters testified that the skid marks were made by a car having the same tire stance and type of tires as Cootz's car. The officer's qualifications as an expert were not challenged. Rather, Cootz argues that there was no foundation evidence showing that the described skid marks were left by the fleeing criminal.

Where the relevance of an item of evidence is questioned on the basis of the sufficiency of the foundation that has been laid for its introduction, the trial judge is invested with sound judicial discretion, and the court's action in accepting or rejecting the item should only be reversed on appeal where a clear abuse of discretion is shown.

*Spears v. Aylor*, 162 Ind.App. 340, 319 N.E.2d 639, 641 (1974). We cannot conclude that this discretion was abused in this case. Fost testified that the fleeing vehicle came to a stop in the lawn area. Witnesses who lived nearby said the car went up on the sidewalk or by a driveway. The skid marks that were measured and compared to Cootz's car were found partially on the sidewalk. Even if McPheters' testimony by itself does not provide adequate foundation, there was other sufficient foundational evidence already in the record to justify the admission of McPheters' testimony.

Next, Cootz alleges error in the admission of evidence regarding his escape from the penitentiary. In August 1980, when the instant crimes were committed, Cootz was on parole. In October he was returned to the penitentiary to await trial. Also in October, a March trial date was set. In January 1981, Cootz escaped from prison. In February he was captured in Hysperia City, California, and returned to Idaho for trial.

The district court allowed evidence of the escape to be given to the jury. Fearful that the evidence would disclose Cootz's prior felony conviction, the judge limited the testimony to disclose only that Cootz had escaped from a "confinement facility." Cootz contends that this evidence should not have been allowed. We agree.

Escape or flight is one of the exceptions to the general rule prohibiting evidence of other crimes. *State v. Hargraves*, 62 Idaho 8, 107 P.2d 854 (1940). Such evidence is admissible because it may indicate a consciousness of guilt. *State v. Jeffers*, 135 Ariz. 404, 661 P.2d 1105 (1983). However,

this inference is seriously weakened when a defendant harbors motives for escape other than guilt of the charged offense. Such is the case here. When he escaped Cootz had twelve years remaining on a prior sentence and his parole had been revoked. An inference of guilty knowledge could be drawn, as well as an inference that Cootz fled to avoid his remaining sentence. In *State v. Jeffers, supra,* the Arizona Supreme Court addressed this issue:

We recognize that authority exists in other jurisdictions that "the circumstances must be such as to exclude every reasonable hypothesis except that of the defendant's guilt of the offense charged," in order for the fact of escape to be admissible at trial. [Citations omitted.] There is more recent authority which indicates that evidence of escape may be introduced in a criminal case, despite multiplicity of pending charges. [Citations omitted.]

The admissibility of evidence of an escape is not determinative of the weight to be afforded to that fact, and the accused may go forward with the evidence to explain any alternative reasons he may have had for the escape....

[T]he existence of alternative reasons for the escape goes to the weight of the evidence and not to its admissibility. *Id.,* 661 P.2d at 1116. As noted in *Jeffers,* not all states permit use of escape evidence where the defendant faces incarceration or punishment for charges other than the ones on which he is being tried. *See generally* 29 AM.JUR.2d EVIDENCE § 286 (1967) and Annot., 3 A.L.R.4th 1085 (1981).

■ We reserve for another day the question of admissibility of escape where there are alternative inferences that can be drawn from the evidence. Assuming such evidence is admissible in this state—a question that has not been decided by our Supreme Court—we believe it was an abuse of discretion to admit it in this case. The trial court in its discretion should not admit evidence when its questionable probative

value is outweighed by its unfair prejudicial effect. *State v. Stoddard,* 105 Idaho 533, 670 P.2d 1318 (Ct.App.1983).

Here, the relevance of the escape evidence was undermined by the fact that Cootz was serving the remainder of a prior felony conviction when he escaped. To make matters worse, this fact was kept from the jury by admission of only the fact that Cootz escaped from a "confinement facility." Thus, the jury was unable to weigh the other possible motives for escape. The only way to cure this problem would have been to admit Cootz's prior felony conviction, the very evidence the court wanted to keep out. When the slight relevance of this evidence is balanced against its prejudicial effect, any probative value is overcome.

Cootz next argues that the prosecutor "sandbagged" him by waiting until his rebuttal at the closing argument to mention the escape. The prosecution had not argued it initially at closing, the defense did not address it, and then on rebuttal the prosecutor argued that the escape was proof of a guilty mind and an attempt to avoid prosecution. The defense objected, but the court allowed the argument because identity was an issue. Since we have held that escape evidence was improperly admitted, it follows that reference to it in the state's closing argument, at any stage, was also improper.

Our task, then, is to determine whether the record discloses that these errors "contributed to the verdict, leaving the appellate court with a reasonable doubt that the jury would have reached the same result had [these events] not occurred." *State v. Palin,* 106 Idaho 70, 75, 675 P.2d 49, 54 (Ct.App.1983). No doubt the jury may have viewed the escape as evidence of guilty knowledge. A cautionary instruction was not given or requested. *See State v. Morris,* 97 Idaho 420, 546 P.2d 375 (1976). However, even if error is prejudicial, a verdict will not be set aside where the evidence of guilt, absent the error, is

sufficient to convince an unprejudiced mind beyond a reasonable doubt that the result would be no different had the error not occurred. *State v. Stoddard,* 105 Idaho 169, 667 P.2d 272 (Ct.App.1983).

The record contains abundant evidence, apart from the escape evidence, which supports Cootz's conviction. His car matched the car described by witnesses. The skid marks, which disclosed that the car had both bias ply and radial tires, matched the tire stance and tire types found on Cootz's car. The robber wore a fake beard. Hair fibers which could be used in a fake beard were found at the scene of the shooting. Similar hair fibers were found in Cootz's car. The clothing Cootz left at the Davis residence was similar to the clothing worn by the robber. Makeup was also found; the robber used makeup to disguise himself. Bird shot was used to shoot the police officer; Cootz's mother-in-law gave police bird shot rounds given to her by Cootz the night of the shooting. The Davises testified to overhearing a conversation wherein Cootz implicated himself. Cootz's co-workers testified that Cootz told them details of the crime that were not included in the newspaper. Cootz was in possession of a large roll of money, including a $100 bill, when he was arrested. We hold that the erroneous admission of escape evidence was harmless beyond a reasonable doubt and accordingly affirm the judgment of conviction.

Next Cootz argues that the state failed to prove an operable firearm, or one which could be readily rendered operable, was used in the robbery. I.C. § 19–2520. A gun was not fired in the robbery. It was not proved that the guns found at the Davis residence were operable, or that either was used in the robbery. Thus, Cootz asserts that there was insufficient evidence to convict him for the use of a firearm in the robbery, pursuant to I.C. § 19–2520. We disagree. Circumstantial evidence may

be used to prove that a firearm was operable. *State v. Metzgar*, 109 Idaho 732, 710 P.2d 642 (Ct.App.1985); *State v. Stedtfeld*, 108 Idaho 695, 701 P.2d 315 (Ct.App.1985). In both *Metzgar* and *Stedtfeld* the gun used in the crime was not admitted into evidence. Close observation by the victims, coupled with threats to use the weapon, were sufficient evidence for the jury to infer that the weapon was operable. Here, two guns were admitted into evidence, but it was not established that either was used in the crimes. The two motel employees did see a gun, although Cootz made no verbal threats to use it. We believe it was reasonable for the jury to infer that the gun used in the robbery was operable, especially in light of the shooting that did occur minutes later.

## III

We now address Cootz's sentencing issues. First he contends that the firearm enhancement penalty constitutes double punishment for a single act. Second he claims errors in the sentencing process; and third he challenges the constitutionality of the alternative fixed sentence statute, I.C. § 19–2513A.

■ Cootz was convicted of aggravated battery. He asserts the testimony showed that the victim, Fost, was not severely injured or permanently disfigured.[1] Therefore, he contends that the battery was aggravated only because he used a deadly weapon. Thus, he argues, punishment for the battery was once enhanced for use of a firearm under I.C. § 18–907 and further enhancement under I.C. § 19–2520 constitutes double punishment in violation of I.C. § 18–301.

We recently addressed the identical issue in a case involving aggravated assault and

held that the Legislature clearly intended the enhancement provision of I.C. § 19–2520 to apply to aggravated assault committed with a firearm. *State v. Metzgar, supra.* The reasoning of that case applies equally to aggravated battery and we again hold that the Legislature was empowered to, and did, provide for the enhanced punishment imposed pursuant to I.C. § 19–2520.

■ Prior to sentencing, the court ordered that a presentence investigation be conducted. I.C. § 20–220; I.C.R. 32. Cootz claims that it was error for the court to consider the report because he requested a formal sentencing hearing pursuant to I.C. § 19–2516. This statute operates in conjunction with I.C. § 19–2515(a) to allow a formal hearing to consider circumstances in aggravation or mitigation of punishment. The circumstances are to be presented by the testimony of witnesses in open court and the receipt of information by other means is restricted. Cootz draws our attention to language contained in *State v. Coutts*, 101 Idaho 110, 113, 609 P.2d 642, 645 (1980):

> The court therefore holds that *in the absence of an explicit request for the formal hearing contemplated by I.C. § 19–2516*, the court may reach its sentencing decision by receiving the unsworn formal statements presented by both sides, together with the presentence report and arguments of the respective counsel. [Emphasis original.]

Read broadly, *Coutts* can be viewed to support Cootz's position. However, at issue in *Coutts* was an unsworn statement made by the prosecutor containing hearsay information. Concerning the presentence investigation, the court said that the enactment in 1947 of I.C. § 20–220 "of necessity relaxed the strict requirements of I.C.

---

1. "A person commits aggravated battery who, in committing battery: (a) Causes great bodily harm, permanent disability or permanent disfigurement; or (b) Uses a deadly weapon or instrument; or...." I.C. § 18–907. A battery which

is not aggravated—a so-called simple battery—is only a misdemeanor punishable by a fine or by a jail sentence not to exceed six months, or both. I.C. § 18–904.

§ 19–2516, otherwise there would be no point in submitting a written report to the court, for the material therein would have to be submitted by the testimony of witnesses." *Id.* at 113, 609 P.2d at 645. In *State v. Rolfe*, 92 Idaho 467, 444 P.2d 428 (1968), the Court held that compliance with I.C. §§ 19–2515, –2516 requires full disclosure of the contents of a presentence report when the report is in fact used by the trial judge in sentencing. We read this to mean that even when a formal hearing is requested it is proper for the court to receive and consider a presentence report. *See State v. Scott*, 237 Or. 390, 390 P.2d 328 (1964) (construing statutes similar to I.C. §§ 19–2515, –2516 and 20–220 to allow information at sentencing to be received either by testimony in open court or by a presentence report). The hearing presents an opportunity to challenge or to rebut the report.

Cootz availed himself of that opportunity in this case. In a lengthy statement read to the court, he criticized the presentence report. He contended then, as he does now, that the report was "unverified, poorly researched, comprised virtually entirely of hearsay, and completely one-sided." The court refused to strike the entire report, but did strike certain "communications" attributed to Cootz's wife because the court decided the communications were statutorily privileged. The report exceeded ninety pages, about half of which concerned details of the robbery and shooting as reported by police officers, victims and witnesses. The second half of the report was a composite of previous presentence reports, psychological reports with extensive background and recent information about Cootz himself. This multi-faceted portrait of Cootz may not be favorable, but the subject of this exposure has not persuaded us that the views are unfair. We hold that the court did not err in relying upon the report for the purpose of sentencing.

▋ Next Cootz asserts that Idaho's alternative fixed sentence statute, I.C. § 19–2513A, violates the Idaho Constitution. That the statute does not impermissibly infringe upon the Board of Correction's authority over parole was determined in *State v. Rawson*, 100 Idaho 308, 597 P.2d 31 (1979). Cootz contends that *Rawson* did not address the question of delegation of legislative authority. He argues that the statute constitutes an unbridled grant of discretion and delegation of legislative authority to the court, in violation of both the legislative powers granted in article 3, section 1, and the separation of powers mandated by article 2, section 1, of the Idaho Constitution. We disagree. The power to define crimes and prescribe penalties lies in the Legislature; the power to try, convict and sentence those guilty of crimes belongs to the judiciary. *Spanton v. Clapp*, 78 Idaho 234, 299 P.2d 1103 (1956). A judge considering a fixed sentence does not usurp the legislative function of determining when parole may be available. The determination that parole need not be available at all has been made by the Legislature in I.C. § 19–2513A. Neither are we persuaded that the judge impermissibly encroaches upon the power of the executive branch to grant or deny parole. That power is a creature of statute and may be modified as the Legislature sees fit. We find no constitutional defect in the Legislature's decision to vest fixed sentencing authority in the courts. *See Cavanaugh v. Crist*, 615 P.2d 890 (Mont.1980).

▋ Lastly, Cootz asserts that his sentences are unduly harsh. He was sentenced to ten years each on the robbery and aggravated battery convictions, and to five years on each of the firearm enhancements. These are fixed sentences and are to run consecutively, for a resulting combined sentence of thirty years in prison without parole.

A sentence within the statutory maximum will not be disturbed on appeal unless a clear abuse of sentencing discretion is shown. *State v. Delin*, 102 Idaho 151, 627 P.2d 330 (1981); *State v. Beltran*, 109 Ida-

ho 196, 706 P.2d 85 (Ct.App.1985). The statutory maximum for these crimes is life for the robbery, plus a combined forty-five years on the other counts. Still, a sentence may represent an abuse of discretion if it is shown to be unreasonable in light of the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). A sentence is reasonable if it is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). When reviewing a fixed sentence, we view the duration of confinement as the term of the sentence less the good conduct deduction available as a matter of right under I.C. § 20–101A. *State v. Beltran, supra.* This reduction could amount to nearly ten years; thus the question is whether confinement of twenty years is reasonable in this case.

When weighing the facts of a given case, we conduct an independent examination of the record focusing upon the nature of the offense and the character of the offender. *State v. Beltran, supra; State v. Adams*, 106 Idaho 309, 678 P.2d 101 (Ct.App.1984). Cootz was convicted of serious crimes of violence committed while he was on parole. The district judge indicated that a long fixed sentence was necessary to protect the public. From our review of the case, we conclude that the sentences imposed were reasonable. We affirm the sentences.

BURNETT, J., and McFADDEN, J. Pro Tem., concur.