647 P.2d 788

STATE of Idaho, Plaintiff-Respondent,

v.

Willard Don CURRY aka Roger Matthews, Defendant-Appellant.

No. 13682.

Court of Appeals of Idaho.

June 29, 1982.

Petition for Review Denied Oct. 1, 1982.

334

Starr Kelso, Coeur d'Alene, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Willard Don Curry, aka Roger Matthews, was tried before a jury and found guilty of burglary in the first degree. The trial court denied Curry's motion for new trial, denied Curry's motion for a withheld judgment, entered judgment, and sentenced him to the custody of the Board of Corrections for an indeterminate period not to exceed fifteen years. Curry appeals from the judgment, the sentence, and the orders denying his motions.

Numerous errors are alleged by Curry on his appeal. In general, he contends as follows: that the trial court improperly instructed the jury; that the court erred in allowing the admission of several items of evidence at trial; that several procedural defects occurred which prejudiced his right to a fair trial; and that the trial court imposed an improper sentence.

*We reverse* the judgment upon the ground that the trial court erroneously refused to give Curry's requested instruction regarding circumstantial evidence, and remand the case for new trial. In light of this remand and for guidance in a new trial, we will also address the contested evidentiary rulings made at trial.

The record discloses the following facts. Around midnight, October 22, 1979, Post Falls police officer Webb Trojan observed a vehicle turn onto a city street and move toward him. The vehicle did not have its headlights on. Due to the distance involved and the street lighting when the vehicle was first observed, Trojan was unable to determine whether the vehicle turned out of an alley or from a nearby street. Soon after the car passed his vehicle, its headlights were turned on. The officer made a U-turn and pursued the car with his overhead lights flashing. Both cars pulled to the side of the road and stopped. Officer Trojan observed four persons in the vehicle: a woman driver, another woman in the front passenger seat, and defendant Curry and another man in the rear. The officer asked some routine questions of the occupants of the vehicle. The driver had a temporary Illinois driver's license and the car was registered in her name in Illinois. A computer check disclosed no outstanding warrants on either the driver or the vehicle. The officer then released the vehicle, after informing the occupants how to find the highway to Spokane and where to find the nearest open gas station. A back-up patrol car followed the vehicle on its way out of town.

After releasing the vehicle, officer Trojan proceeded to an alarm call at the Ben Franklin Pay Rite Drug Store. It first appeared to be a false alarm because the drugstore's front doors were securely fastened. Driving down the alley behind the drugstore building, however, officer Trojan discovered a hole knocked through its red, cinder-block rear wall. Because the vehicle he had just released was first observed proceeding in a suspicious manner from the

vicinity of this drugstore, Trojan radioed for the back-up patrol car to stop the vehicle before it left town. This was done. Trojan rendezvoused with the back-up patrol car and assisted in further questioning of the vehicle's four occupants. At this time, the defendant Curry gave his name as "Roger Matthews." All four occupants were read Miranda warnings, were placed in the back seat of the two patrol cars, and were returned to the burglary scene for questioning by detectives who were investigating the incident. Also at the scene was a security guard who had responded to the drugstore's alarm.

During the course of investigating the break-in, police detective Randy Bohn discovered a piece of cardboard lying on the muddy ground just below the hole in the drugstore wall. The ground near the hole and the piece of cardboard were covered with concrete fragments and white dust. There were muddy footprints on the piece of cardboard. Bohn checked the shoes of the security guard and the other police officers at the scene, as well as those of Curry and the other male suspect, to see if their shoes might have made the footprints on the cardboard.

Bohn concluded that Curry's shoes had a tread design which matched the tread mark of the muddy footprints on the piece of cardboard. The police told Curry he was under arrest for first degree burglary. Curry was asked to remove his shoes. He complied, removing one shoe himself, with Trojan assisting him in removing the other. Fresh mud and white dust were stuck in the treads on the bottom of Curry's shoes. The police seized the shoes as evidence.

A magistrate issued a warrant to search the vehicle occupied by Curry when he was first observed by officer Trojan. Seized in this search were fifty-seven dollars cash, concrete fragments, and several tools, including a sledgehammer which had red paint marks on the hammerhead and was covered with white dust.

At the preliminary hearing, Curry swore under oath that his true name was Willard Don Curry, not Roger Matthews. He was bound over to the district court for trial.

I.

The first question we address on this appeal is the failure of the trial court to give Curry's requested jury instruction number 15. This requested instruction dealt with circumstantial evidence, as follows:

A finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion.

Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt.

Also, if the circumstantial evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt.

If, on the other hand, one interpretation of such evidence appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and reject the unreasonable.

In denying this requested instruction, the trial court remarked, "Number 15, expansion of circumstantial evidence, I think that's sufficiently covered." The instruction which the court felt sufficiently covered this area merely distinguishes between direct and circumstantial evidence, as follows:

Evidence may be either direct or circumstantial. It is direct evidence if it

proves a fact, without an inference, and which in itself, if true, conclusively establishes that fact. It is circumstantial evidence if it proves a fact from which an inference of the existence of another fact may be drawn.

An inference of fact is one which may logically and reasonably be drawn from another fact or group of facts established by the evidence.

The law makes no distinction between direct and circumstantial evidence as to the degree of proof required; each is accepted as a reasonable method of proof and each is respected for such convincing force as it may carry.

In the present case, the evidence linking Curry to the burglary was entirely circumstantial. Curry cites *State v. Holder*, 100 Idaho 129, 594 P.2d 639 (1979), where the Idaho Supreme Court held reversible error occurred when a trial court gave an instruction identical to the one given here after rejecting a requested instruction which was substantially similar to Curry's instruction number 15. *Id.* at 132, 594 P.2d at 642.

The state argues that the rejected instruction was sufficiently covered by other instructions given by the court. Without listing those instructions, suffice it to say that we have thoroughly examined them and find the state's position to be without merit. The state further asserts that the evidence against Curry, though circumstantial, indicated his guilt much more than the weak circumstantial evidence against the defendant in *State v. Holder, supra,* thus distinguishing the two cases. We view this argument also to be without merit.

■ We are unable to distinguish between the case of *State v. Holder, supra,* and the case at hand. *Holder* stands for the proposition that where—as here—the evidence linking a defendant to a burglary is entirely circumstantial, it is not sufficient that the court give instructions which only distinguish between direct and circumstantial evidence. The case holds that it is error to refuse to give an instruction requested by the defendant informing the jury that a conviction cannot be based solely on circumstantial evidence, unless the circumstances are consistent with guilt and inconsistent with innocence, and incapable of explanation on any other reasonable hypothesis than that of guilt. Id. at 133, 594 P.2d at 643. *See also State v. Davis*, 69 Idaho 270, 206 P.2d 271 (1949); *State v. McLennan*, 40 Idaho 286, 231 P. 718 (1925); *State v. Marcoe*, 33 Idaho 284, 193 P. 80 (1920).

As in *Holder*, Curry's requested instruction was a proper statement of the law, and it was erroneously refused. The judgment of conviction must be reversed, with directions to the trial court to grant a new trial.

## II.

■ We will next discuss certain evidentiary rulings of the trial court raised as issues on this appeal. The first such question is whether the court erred in admitting in evidence the sledgehammer found in the vehicle. Curry argues this evidence should have been suppressed because it was seized pursuant to a search warrant which failed to comply with I.C.R. 41. More specifically, the alleged noncompliance with the rule is (1) the failure of the search warrant to contain a designation of the district judge or magistrate to whom return of the warrant was to be made as required by I.C.R. 41(c); and (2) the failure of the return to the search warrant to list specifically the sledgehammer as an item seized in the vehicle search.

Idaho Criminal Rule 41(c), as in effect when the search warrant for the vehicle was issued in 1979, stated in pertinent part that a search warrant "shall designate the district judge or magistrate to whom it shall be returned."[1] The search warrant for the vehicle did not comply with this provision. Curry urges that the sledgehammer seized pursuant to this "defective"

---

1. It should be noted that this provision, which is identical to one contained in Rule 41(c) of the Federal Rules of Criminal Procedure, was deleted from I.C.R. 41(c) by our Supreme Court effective July 1, 1980.

search warrant should have been suppressed at trial due to non-compliance with this rule. In support of his position, Curry cites *State v. Montoya*, 86 N.M. 119, 520 P.2d 275 (1974), as authority that the provision in Rule 41(c) is mandatory, not merely ministerial, and therefore non-compliance makes the warrant void and the evidence seized thereunder inadmissible at trial. We respectfully decline to follow the New Mexico authority on this issue. Our research in this matter discloses a more persuasive line of authority, represented by the holding of the Washington Court of Appeals in *State v. Smith*, 15 Wash. 716, 552 P.2d 1059 (Wash.App.1976). There the court said,

> [w]e first take up the defendants' challenge to the warrant on the ground it failed to 'designate a magistrate to whom it shall be returned,' . . . . Although defendants are correct as to this omission, defects relating to the return of a search warrant are ministerial and do not compel invalidation of the warrant or suppression of its fruits, absent a showing of prejudice by the defendant. *See United States v. Wilson*, 451 F.2d 209 (5th Cir. 1971); *State v. Ronniger*, 7 Or.App. 447, 492 P.2d 298 (1971). Here the warrant was timely returned to the issuing court on August 9, 1974. The defendants demonstrate no prejudice due to the failure of compliance with the rule. Under these circumstances, there is no reversible error.

552 P.2d at 1062.

The view of the Washington court is in accord with other jurisdictions which have addressed similar issues. It is generally held that the requirements of a rule relating to the making of a return and inventory to a search warrant are ministerial in nature and a failure to comply with those requirements does not render the search warrant or the seizure of property pursuant thereto invalid per se. There must be a showing of prejudice by the defendant before exclusionary sanctions are invoked. *See United States v. Neal*, 500 F.2d 305 (10th Cir. 1974); *Evans v. United States*, 242 F.2d 534 (6th Cir. 1957); *Rose v. United States*, 274 F. 245 (6th Cir. 1921); *State v.*

*Ames*, 222 Kan. 88, 563 P.2d 1034 (1977); *Wright v. State*, 552 P.2d 1157 (Okl.Cr. 1976); *People v. Schmidt*, 172 Colo. 285, 473 P.2d 698 (1970).

In the instant case, although the rule requiring designation of the court to whom the search warrant should be returned was worded in a mandatory style, we hold it was but a ministerial procedural requirement. Here the police filed a return of the warrant with the court the day after the search was made, listing an inventory of the items seized. Curry had notice of the prosecution's possession of the sledgehammer as early as the date of the preliminary hearing. We fail to see how Curry was prejudiced by this non-compliance with a procedural requirement of I.C.R. 41(c), which has since been deleted from the rule. Consequently, regarding this first argument, we hold there was no error in the trial court's failure to suppress the evidence seized under the warrant.

Likewise, Curry's argument regarding the failure of the return of the search warrant to itemize the sledgehammer as property seized pursuant to the warrant must be supported by a showing of prejudice. In *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), the United States Supreme Court addressed the failure to list in the return to the warrant the items seized pursuant to execution of the warrant. The court said:

> The seizure [of the items] occurred while a valid warrant was outstanding, and thus could not be considered unconstitutional under the theory advanced below. As these items were constitutionally seized, we do not deem it constitutionally significant that they were not listed in the return of the warrant. *The ramification of that "defect," if such it was, is purely a question of state law.* (Emphasis supplied.)

413 U.S. at 449, 93 S.Ct. at 2531–32.

Faced with the issue of failure of the return to itemize property seized pursuant to a valid warrant, the Kansas Supreme Court has concluded that a warrant should

be quashed and evidence suppressed only where a defendant demonstrates prejudice from a technical irregularity in violation of the rules of procedure governing the execution of search warrants. *State v. Ames,* 222 Kan. 88, 563 P.2d 1034 (1977). We accept the rationale of that court as persuasive in the instant matter. Here the failure of the return to the search warrant to list the sledgehammer in the inventory of the specific items seized from the vehicle did not require suppression of the evidence seized. The search was made within the time limit imposed by the magistrate. The return was filed on the day after the warrant was issued. There is no allegation or showing that the warrant was not valid on its face, other than as regards the ministerial defects discussed herein. Failure to specifically list the sledgehammer on the return did not prejudice Curry because he learned of the existence of the evidence as early as the preliminary hearing. We find no merit to this allegation of error.

### III.

Curry also alleges error in the admission of his shoes as evidence, contending that they were illegally seized in a warrantless search prior to his being arrested. The facts show that prior to the seizure of the shoes, the police had reasonably stopped the vehicle Curry was riding in, had read Miranda warnings to him, and had taken him into custody by placing him in the back seat of a patrol car, thereafter returning him to the scene of the burglary for questioning by the detectives. At the scene, Trojan asked Curry to hold his foot up so the officers could look at the sole of his shoe. He complied. Detective Bohn determined that the shoe sole matched the footprint on the cardboard. Curry was then informed that he was under arrest and the shoes were removed from his feet and taken into possession by the officers. At no time did Curry object to or resist the officers' activities regarding his shoes.

We hold that the seizure of the shoes without a search warrant was proper. Curry did not have a reasonable expectation of privacy with respect to the physical characteristics of the soles of his shoes. *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Coleman,* 593 P.2d 684 (Ariz.App.1978). *Cf. United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (no reasonable expectation of privacy in respect to physical characteristics of one's voice); *United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (no reasonable expectation of privacy in a handwriting exemplar). The imprint his shoes made upon the piece of cardboard was, like handwriting and speech, an activity "repeatedly shown to the public." *Mara, supra.* Examination of the physical characteristics of the soles of the shoes by the officers "involves none of the probing into an individual's private life and thoughts that marks an interrogation or search." *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (quoted in *Dionisio, supra,* 410 U.S. at 15, 93 S.Ct. at 772, and in *Coleman, supra,* 593 P.2d at 687).

Having observed and examined the soles of the shoes, and determined that Curry should be arrested, the officers then had the right to seize the shoes. Seizure of evidence from the person of a defendant is proper to prevent destruction of that evidence, *State v. Harwood,* 94 Idaho 615, 495 P.2d 160 (1972), even where the person has not yet been formally arrested. *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973).

Upon his arrest, the police removed Curry's shoes as evidence relevant to his guilt or innocence—due to their tread design and to the mud and white dust stuck in the tread. The mud and white dust easily could have been removed from the shoes, had Curry been allowed to keep the shoes in his possession. Seizure of the shoes was justified by the need to preserve the tread design and the mud in the tread from alteration or destruction. Under these circumstances, the seizure of Curry's shoes was not unreasonable nor illegal. We hold it was not error to allow the shoes to be admitted as evidence at trial over the search and seizure objection.

## IV.

Next, Curry assigns error to the admission of opinion testimony given by detective Bohn, and Ned Stuart, a director of a "criminalistic center" and instructor at North Idaho College. In *State v. Cutler*, 94 Idaho 295, 486 P.2d 1008 (1971), our Supreme Court, citing several civil cases as legal authority, announced the rule we must follow regarding admissibility of opinion testimony in criminal actions. The court held that the admissibility of opinion testimony—even non-expert—and its competency, are largely discretionary with the trial court, and that the determination of the weight of the evidence is a matter for the jury. *Id.* at 299, 486 P.2d at 1012. Absent an abuse of discretion, the decision of the trial court to admit the evidence will not be disturbed on appeal. *State v. Griffiths*, 101 Idaho 163, 165, 610 P.2d 522, 524 (1980).

Bohn testified that when he found the piece of cardboard, he compared the muddy footprints on it with the shoe tread designs of all persons present at the burglary scene, except for the two women suspects. He testified the tread design on Curry's shoes "closely resembled" the footprint. He did not, however, take specific measurements nor observe any peculiarities of the footprint other than the tread design. Curry asserts Bohn was not qualified to testify regarding the comparison between the footprints and Curry's shoes because measurements were not made and peculiarities were not observed. *See State v. Rondeau*, 89 N.M. 408, 553 P.2d 688 (1976). We do not agree with this contention. Bohn's testimony was based on his own personal knowledge, derived soon after the crime by examination and observation of the footprints and shoes at the scene of the burglary. Under the circumstances, we see no abuse of discretion in admitting this opinion testimony, even though the witness was a layman. *See State v. Johnson*, 96 Idaho 727, 536 P.2d 295 (1975).

Stuart testified that the metal head of the sledgehammer had blue coloration when new, as evidenced by traces of blue paint still upon it. On direct examination he was shown a photograph depicting marks made on the block wall in the proximity of the hole in the rear of the drugstore. He then expressed his opinion that a blue object had struck the wall, leaving a blue mark similar to the coloration of the sledgehammer. On cross-examination, Stuart admitted that the color or shade of blue in the photograph may have been inaccurately depicted, depending on how the development process of the photo was carried out. Curry argues that, in light of this testimony, the trial court abused its discretion in originally allowing the admission of the testimony concerning the similarity in coloration. We do not agree. It is apparent that the jury could disregard the testimony or assign it its proper weight in light of the cross-examination. We find no abuse of discretion in admitting this evidence.

## V.

Curry has raised other issues on appeal, including (a) the reading of the information containing Curry's multiple aliases to the jury; (b) whether Curry received effective assistance of counsel at trial; (c) conduct of the prosecutor in closing argument; and (d) whether the sentence originally imposed was proper. We deem all of those matters to be moot in light of the reversal and remand for retrial of this matter, dispensing with the necessity of discussing those issues. We also note that the suppression of several items of evidence, for failure of the prosecutor timely to comply with court-ordered discovery, is no longer required for purposes of a new trial. The prejudice of untimely disclosure no longer exists. Proper discovery in further proceedings will afford Curry his procedural due process rights.

The matter is reversed and remanded for new trial.

BURNETT and SWANSTROM, JJ., concur.