731 P.2d 788
**STATE of Idaho, Plaintiff-Respondent,**

v.

**John L. NELSON, Jr.,
Defendant-Appellant.**

No. 16099.

Court of Appeals of Idaho.

Nov. 26, 1986.
Addendum Jan. 21, 1987.

**246**

David A. Frazier (argued), and Thomas A. Mitchell, Coeur d'Alene, for appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

Following a jury trial, John Nelson was convicted of delivery of cocaine. He appeals, contending the trial court erred (1) in refusing to suppress evidence seized pursuant to a search warrant; (2) in failing to instruct the jury as to the applicable law; and (3) in admitting certain drug-related items in evidence over objections based on lack of foundation. Nelson also asserts there was insufficient evidence to support the jury's verdict. We reverse due to error in instructing the jury about circumstantial evidence, and we remand for a new trial.

The record reveals the following facts. In March, 1984, police officers arranged for the purchase of cocaine by an informant. The informant was wired with a transmitter and given $625 in recorded bills to make the purchase. The informant, Ron Johnson, went to the house of Darryl McCarthy in Coeur d'Alene and gave McCarthy the money to buy the cocaine. McCarthy then called James O'Neil who later delivered the cocaine to McCarthy's house. Johnson, whom O'Neil distrusted, hid in a closet in McCarthy's house while O'Neil and McCarthy exchanged the money and the cocaine. When O'Neil left the house, the officers followed him to the house of the appellant, John Nelson. In the meantime, the officers had met and talked with the informant who gave them the cocaine he had purchased through McCarthy. According to the officers, the informant indicated that he overheard O'Neil state that he had to take the money back to where he had obtained the cocaine.[1] The officers, who had placed Nelson's house under surveillance, applied to a magistrate for a warrant to search Nelson's house.

While the officers were procuring the warrant, Nelson got in his car and drove away from his house. He was stopped by the officers and detained for approximately forty-five minutes while the warrant was

---

1. O'Neil's alleged statement apparently was not overheard by the officers through the transmitter carried by Johnson. At a hearing on Nelson's motion to suppress, the officers disclosed that the transmitter had become inoperative sometime during the transaction in McCarthy's house.

being obtained. The facts of Nelson's departure from his house and his detention by the surveillance team were communicated to the officer who was applying for the search warrant. As a result, the issued warrant authorized a search of Nelson, his car, and his house. Police then conducted the searches authorized by the warrant. In one of Nelson's socks, the officers found $550 of the recorded bills. In Nelson's house, the officers found various items that could be used by a dealer in cocaine. These items included cocaine reference manuals, a scale, substances that could be used to dilute cocaine, and a "hot box"—a device used to determine the melting point of cocaine to judge its purity. The officers also found magazines which had been cut up to make "bindles" or small envelopes in which cocaine is frequently packaged. The remains of a page from a magazine found at Nelson's house matched the bindle in which the cocaine purchased by the informant was contained. However, no cocaine was found either on Nelson or in his house or vehicle. Nelson was charged with delivery of cocaine based on the cocaine delivered to McCarthy.

Prior to trial Nelson moved to suppress the evidence discovered during the searches. The district court refused to suppress, holding that there was probable cause for the searches and, even if probable cause did not exist, that the officers had acted in good faith in executing the warrant. At trial, the prosecution offered into evidence several of the drug-related items seized during the searches. Nelson objected to admission of these items, contending that the state had not shown that the items were used for or in connection with the alleged cocaine delivery. Nelson also requested that certain jury instructions, including an instruction dealing with circumstantial evidence, be given. The district court refused to give Nelson's circumstantial evidence instruction on the ground that it was covered by other instructions given to the jury. The judge also refused Nelson's other instructions and gave instructions to which Nelson objected. The jury found Nelson guilty of delivery of cocaine. With these facts, we turn to Nelson's issues on appeal.

I

Motion to Suppress

■ Nelson urges that the evidence discovered in the searches should not have been admitted because his initial detention by the officers was wrongful and therefore the fruits of that illegal detention should be suppressed. Nelson also contends that there was not probable cause for issuing the search warrant. We conclude that the trial court did not err in denying the suppression motion for either reason.

Nelson argues that his initial stop by the officers was wrongful and the ensuing forty-five minute detention, while the warrant was being obtained, violated the standards established in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Terry* upheld brief investigative stops where there are articulable and reasonable suspicions that criminal activity is afoot, even though there may not be probable cause for an actual arrest. Here the record abundantly supports the conclusion that the initial stop of Nelson was reasonable. After O'Neil had delivered the cocaine, O'Neil declared that he was taking the money back to where he had obtained the drugs. The officers followed him to Nelson's house and, upon identifying that location, proceeded to obtain a search warrant. The officers were aware that, several years before, Nelson had been charged with trafficking in cocaine. The officers logically and reasonably could infer that a person leaving Nelson's house may have been involved in O'Neil's cocaine delivery and may have evidence, such as the recorded bills or more cocaine, in his possession. Thus the detention of a person who was at the house when O'Neil was followed there, and who then tried to leave while the officers were procuring the warrant, was justified. *See United States v. Elkins*, 732 F.2d 1280 (6th Cir.1984).

■ While the initial stop was justified, the reasonableness of the length of the

detention itself is a closer question. Based on the United States Supreme Court's holding in *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), we conclude that the detention was not violative of Nelson's constitutional right against unreasonable searches and seizures. In *Sharpe,* the Court refused to set a "bright line" time limit for determining the propriety of an investigative stop. Rather than establish a hard-and-fast time limit, the Court stated that the appropriate inquiry is "whether the officers diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.,* 470 U.S. at 686, 105 S.Ct. at 1575. Thus the Court recognized that in some circumstances, the length of the stop may be longer than in others. The Court noted that a reviewing court should "take care to consider whether the officers are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Id.* Here the officers were in such a situation. The officers had already commenced application for the warrant to search Nelson's house. When Nelson left the house and was stopped, this information was relayed to the officer applying for the warrant, who then included a request to the magistrate that the warrant cover Nelson and his car. We find no fault with the officers' actions in stopping and detaining Nelson. Furthermore, the record clearly establishes that the officers were diligent in pursuing their investigation.

■ Nelson also asserts that the officer who applied for the warrant gave false information to the magistrate, specifically information that O'Neil had driven evasively as he was going to Nelson's house. Nelson urges that this allegedly false information was given intentionally or with reckless disregard for the truth, thus requiring that the information be excised from the facts upon which the magistrate found probable cause to issue the warrant. *State v. Lindner,* 100 Idaho 37, 592 P.2d 852 (1979) (applying *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). Under *Lindner* the defendant must show by a preponderance of the evidence that material false information was included in the affidavit for probable cause. *Id.*

` The officer testifying before the magistrate, Officer Kane, relayed to the magistrate information he had received from the officers who were following O'Neil. Kane told the magistrate where Kane had obtained the information and that he believed the officers who gave it to him were reliable. He described O'Neil's actions as driving on side streets as if O'Neil was checking to see if he was being followed. The officer who gave this information to Kane testified that he thought O'Neil's driving was such that O'Neil might have been trying to avoid surveillance. We have reviewed the testimony detailing O'Neil's driving. That testimony describes where O'Neil went. However, whether the driving was or was not "evasive" is not apparent from the record. The officers testified that they thought it was evasive. Although O'Neil himself was called as a witness at the suppression hearing, he gave no testimony about his driving. In short, Nelson has failed to meet his threshold burden under *Franks* and *Lindner* of making a prima facie showing of falsity.

■ Nelson also contends the warrant was issued without probable cause and that the resulting searches were thus unreasonable. Nelson asserts that "the fatal flaw in the findings [sic] of probable cause . . . is the lack of evidence connecting Nelson with the cocaine delivered by O'Neil." The district court found that there was probable cause and, alternatively, that the officers acted in good faith, thus precluding any suppression under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We conclude that there was probable cause for issuing the warrant and accordingly do not reach the applicability of *Leon's* good faith exception. The standard for determining probable cause is based on a "totality of the circum-

**249**

stances" test. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Lang*, 105 Idaho 683, 672 P.2d 561 (1983). A magistrate's determination of probable cause is accorded great deference by a reviewing court. *State v. Gomez*, 101 Idaho 802, 623 P.2d 110 (1980). An appellate court's function is to insure that the magistrate had a substantial basis for concluding that probable cause existed. *State v. Lang, supra.* Admittedly, the evidence against Nelson was entirely circumstantial. However, O'Neil indicated to McCarthy that he was going to take the money back to where he had obtained the cocaine. The officers followed O'Neil to Nelson's house where O'Neil remained for a short period of time and then left. We conclude there was probable cause to believe that a crime had been committed and that Nelson was involved in that crime. Thus the district court did not err in determining that probable cause existed for issuance of the warrant.

**2.** Nelson's requested instruction read as follows:

A finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion.

Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt.

Also, if the circumstantial evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt.

If, on the other hand, one interpretation of such evidence appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and reject the unreasonable.

**3.** The *Holder* instruction recited:

You are not permitted to find the defendant guilty of the crime charged against him based on circumstantial evidence unless the proved

II

### Jury Instructions

Nelson asserts the jury was not given proper instructions by the trial court. He questions instructions relating to: circumstantial evidence; aiding and abetting the commission of an offense; alibi; credibility of a paid informant; possession of drug paraphernalia; and authority to deliver controlled substances. We will address each of these instructions separately.

### A. *Circumstantial Evidence.*

■ It is undisputed that the evidence against Nelson was entirely circumstantial. Consequently, Nelson requested an instruction [2] similar to one approved by our Supreme Court in *State v. Holder*, 100 Idaho 129, 594 P.2d 639 (1979).[3] However, the trial court refused to give Nelson's proposed instruction. Instead, the court gave instructions that differed from the *Holder* instruction.[4] Nelson contends the instruc-

circumstances are not only consistent with the theory that the defendant is guilty of the crime, but cannot be reconciled with any other rational conclusion and each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt has been proved beyond a reasonable doubt.

Also, if the evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject the other which points to his guilt. [100 Idaho at 132, 594 P.2d at 642.]

**4.** The instructions given by the court stated:

So if the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that a defendant is guilty of the charge, it must acquit. If the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, the jury should, of course, adopt the conclusion of innocence.

There are two types of evidence from which you may find the truth as to the facts of the case; that is direct and circumstantial evidence. Direct evidence is the testimony of one who asserts actual knowledge of a fact, such as an eye witness; circumstantial evidence is proof of a chain of facts and circum-

tions given were improper and that his requested instruction should have been given.

In *State v. Holder, supra,* the Court held that, in a case based entirely on circumstantial evidence, it was reversible error to refuse to give the instruction set forth at footnote 2, *supra.* That instruction informed the jury that a defendant cannot be convicted unless "the proved circumstances are not only consistent with ... [guilt], but cannot be reconciled with any other rational conclusion." The instruction emphasized that "if the evidence is susceptible of two reasonable interpretations," one pointing to guilt and the other to innocence, the jury must adopt the interpretation of innocence. As we noted in *State v. Curry,* 103 Idaho 332, 336, 647 P.2d 788, 792 (Ct.App.1982), *Holder* was one of a long series of Idaho Supreme Court decisions declaring that "a conviction cannot be based solely on circumstantial evidence, unless the circumstances are consistent with guilt and inconsistent with innocence, and incapable of explanation on any other reasonable hypothesis than that of guilt." *See State v. Davis,* 69 Idaho 270, 206 P.2d 271 (1949); *State v. McLennan,* 40 Idaho 286, 231 P. 718 (1925); *State v. Marcoe,* 33 Idaho 284, 193 P. 80 (1920).

In *State v. Paradis,* 106 Idaho 117, 676 P.2d 31 (1984), the Supreme Court refused to find "fundamental error" in a circumstantial evidence instruction to which no objection had been made at trial.[5] The instruction, although not identical to the *Holder* instruction, informed the jury that

a conviction was permissible only if all facts were consistent with guilt and excluded "every reasonable hypothesis" other than guilt. Here, the state has argued that *Paradis* modified *Holder* and previous decisions, and that the instruction given by the trial court in this case passes muster under *Paradis.* We do not agree. *Holder* and the cases preceding it set the standard for the "reasonable hypothesis" instruction. The instruction in *Paradis* did not so utterly deviate from this standard so as to constitute fundamental error; but neither did *Paradis* reduce the standard itself as suggested by the state. *See State v. Holman,* 109 Idaho 382, 707 P.2d 493 (Ct.App. 1985).

In this case, unlike *Paradis,* the defendant did object to the instructions given. Those instructions vary significantly from the standard established by *Holder* and its antecedents; they even represent a dilution of *Paradis.* The instructions do not explain the importance of circumstantial evidence to the case. They do not refer to alternative "reasonable interpretations." They do not say that the evidence must exclude "every reasonable hypothesis" except guilt. Nor do the instructions say that the evidence must be irreconcilable with "any other rational conclusion." Rather, they merely say that if the evidence permits conclusions either of guilt or of innocence, the jury must adopt the conclusion of innocence. This watered-down message is further tempered by a statement that "the conclusion of guilt need not necessarily follow from the circumstances

---

stances indicating the guilt or innocence of the defendant.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence; nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all the evidence in the case. After weighing all the evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty.

You are instructed that circumstantial evidence is often the only means of establishing the ultimate fact of guilty [sic], and such evidence alone will support a conviction if it produces a belief beyond a reasonable doubt in the minds of the jury that the accused is

guilty, and the conclusion of guilt need not necessarily follow from the circumstances in proof but may be obtained therefrom by probably [sic] deductions.

5. The *Paradis* instruction was:

To convict the defendant, the evidence must, to your minds, exclude every reasonable hypothesis other than the guilt of the defendant. If after consideration of all the evidence in the case, you may reasonably explain the facts given in evidence on any reasonable ground other than the guilt of the defendant, you must acquit. [106 Idaho at 120, 676 P.2d at 34.]

in proof but may be obtained therefrom by probably [sic] deductions."

The instruction specifically requested by Nelson in this case was a more definitive statement of the law. We also deem it important that the trial judge, commenting on this case, stated "the evidence in the case was, I wouldn't say it was terribly weak, but it was not extremely persuasive. In other words, it was not conclusive as against the Defendant." In all cases the jury should receive definitive instructions on the applicable law. In close cases, such as this one, the instructions take on a particular importance, and deviations from established case law must be viewed with a more critical eye. Based on these factors, we are not convinced that the jury which convicted Nelson was adequately informed about the applicable law in a close case resting entirely on circumstantial evidence.

We also note with some concern the view expressed by the prosecutor in this case that the *Curry* decision, which confirmed the requirements established by *Holder*, has been essentially abandoned by the *Paradis* decision. We do not view the *Paradis* decision in that light. The "reasonable hypothesis" instruction remains a mandatory requirement in circumstantial evidence cases. The state has urged on appeal, as it did in *Holman*, that we overturn more than six decades of case law and abandon the "reasonable hypothesis" instruction requirement because it may be "confusing" to the jury. We again decline to do so. The state has not identified, and we do not find, the precise source of the "confusion" that the state claims. To the contrary, as we said in *Holman*, a "reasonable hypothesis" instruction gives "sharpened clarity" to the meaning of reasonable doubt in a circumstantial evidence case. 109 Idaho at 390, 707 P.2d at 501. Such an instruction may force a jury to think extra carefully about its choices of inferences, but that is wholly appropriate where life or liberty may turn on the inferences drawn. We conclude that the instructions in this case were inadequate. The judgment of conviction must be reversed with direction to the trial court to grant a new trial.

### B. *Aiding and Abetting Instruction.*

The trial court gave instructions to the jury which defined aiding and abetting and informed the jury that all parties concerned in the commission of a crime are considered to be principals. Idaho has abolished distinctions between principals and those who aid and abet. *State v. Wheeler*, 109 Idaho 795, 711 P.2d 741 (Ct. App.1985). Nelson asserts that it was error to give the aiding and abetting instruction because no evidence was presented of any third party involvement in the delivery of cocaine to O'Neil. That assertion is misfocused. The crime committed was the sale and delivery of cocaine. Whether the jury viewed O'Neil as the seller and Nelson as aiding the sale, or viewed Nelson as the seller and O'Neil as aiding Nelson, is irrelevant. There was substantial evidence presented to show the state's theory of Nelson's involvement in the crime. That evidence fully supported an aiding and abetting instruction.

### C. *Alibi Instructions.*

At trial, Nelson, who did not testify himself, asserted an alibi as a defense to the delivery charge. He contends the court effectively negated that defense by giving the following instruction:

> You are instructed that while the Information charges that the crime was committed on or about a certain date, that the time is immaterial and that if you believe from the evidence beyond a reasonable doubt that said crime as committed by the defendant within a reasonable time before or after said date, you should find said defendant guilty as charged.

The evidence presented by the state and by Nelson accounted for the various participants' actions during the evening the cocaine delivery and purchase occurred. However, the evidence was not exacting enough to account for each party's location at any given moment. Nelson's alibi witness, a bartender at a bar Nelson went to

the day of the drug delivery, testified that Nelson was at the bar from about 6:00 to 6:45 that evening. However, the bartender's testimony only established Nelson's presence for part of the evening. Nelson argued to the jury that it was unreasonable to believe the events could have occurred within the time frame indicated by the witnesses' testimony. The reasonableness of that argument was for the jury to decide. The instruction informed the jury that the evidence did not have to establish exact times. The instruction allowed the jury to determine, beyond a reasonable doubt, whether Nelson was involved in the commission of the crime.

■ Nelson also charges that the court erred by refusing to give his requested alibi instruction,[6] citing as support *United States v. Ragghianti*, 560 F.2d 1376 (9th Cir.1977). We find the argument to be unpersuasive. In *Ragghianti*, the defendant presented testimony by three witnesses who stated that Ragghianti was somewhere else when the crime was committed. Such is not the case here. Although Nelson's witnesses testified as to his presence at various times of the day, none of them testified that Nelson could not have committed the crime because he was with them. As noted, the instruction that was given allowed the jury to make a reasonable doubt determination of whether Nelson was involved in the crime. Essentially, Nelson's proposed instruction would have also allowed the jury to make the same determination. We conclude that the district court did not err in giving the instruction that it did, nor did the court err in refusing to give Nelson's requested alibi instruction.

## D. *Informant's Testimony Instruction.*

■ Nelson requested, and the court refused to give, an instruction advising the jury to examine a paid informant's testimony with greater caution than the testimony of ordinary witnesses. The district court ruled that such an instruction would be an impermissible comment on the evidence and on the credibility of a witness, citing *State v. Lucio*, 99 Idaho 765, 589 P.2d 100 (1979).

We believe the court was in error in so applying *Lucio*. The question in *Lucio* was whether the jury should be instructed that the testimony of an alleged accomplice should be "viewed with distrust." Here the paid informant was not an accomplice and the requested instruction did not apprise the jury to view the informant's testimony "with distrust." Instead, the proposed instruction was consistent with the general rule that the jury should be advised to examine a paid informant's testimony with greater caution than that of ordinary witnesses. *See* 1 DEVITT AND BLACKMAR FEDERAL JURY PRACTICE AND INSTRUCTIONS, § 17.02 (3d ed. 1977). Most federal and state jurisdictions favor the giving of such an instruction in all cases involving a paid informant's testimony—especially where the instruction is requested by the defendant. This tendency is enhanced where the informant's testimony is the sole or primary evidence against the accused, or where the informant's testimony is uncorroborated. *United States v. Williams*, 463 F.2d 393 (10th Cir.1972) (sole evidence); *People v. DeLa Rosa*, 644 F.2d 1257 (9th Cir.1980) (primary evidence); *Marshall v. State*, 87 Nev. 536, 490 P.2d 1056 (1971) (sole evidence); *Smith v. State*, 485 P.2d 771 (Okla. Cr.1971) (uncorroborated or unsubstantiated evidence). But some courts have gone so far as to state that the instruction should be given whenever an informant testifies. *Fresneda v. State*, 483 P.2d 1011 (Alaska 1971).

In the present case, the informant's testimony was not the sole or primary evidence against Nelson. In fact, the testimony is only circumstantial and is temporally dis-

---

**6.** Nelson's proposed instruction recited:
> The defendant in this case has introduced evidence for the purpose of showing that he was not present at the time and place of the commission of the alleged offense for which he is on trial. If, after consideration of all the evidence, you have a reasonable doubt that the defendant was present at the time the crime was committed, he is entitled to an acquittal.

tinct from the bulk of the evidence implicating Nelson in drug dealing. Since the informant's testimony was not the primary evidence against Nelson, the failure to give the requested instruction was, at most, harmless error.

### E. *Drug Paraphernalia Instruction.*

■ Nelson asserts that it was error for the court to refuse a requested instruction dealing with drug paraphernalia. Nelson cites as support *State v. Newman,* 108 Idaho 5, 696 P.2d 856 (1985). However, as noted by the trial judge, *Newman* dealt with a challenge to the constitutionality of Idaho's drug paraphernalia statute. In that case, Newman was charged with possession and delivery of paraphernalia. The Supreme Court held that in prosecuting under this statute, the state must prove that the defendant used or intended the item for use with an illegal drug. Nelson was not charged with a paraphernalia violation, and *Newman* is not applicable. We hold Nelson's assertion to the contrary is without merit.

### F. *Instruction Concerning Authority To Deliver a Controlled Substance.*

■ The trial court gave the following to the jury:

> You are instructed, that the state does not have the burden of proving that the defendant did not have any authority under Idaho law to deliver the controlled substances involved in this case. It is presumed that the defendant do [sic] not have any such authority and the burden of proff [sic] is upon the defendant to rebut this presumption.

Nelson asserts that this instruction imposed upon him the burden of proving he was authorized to deliver cocaine and that this burden tainted the presumption of innocence. However, Nelson never claimed to have delivered any cocaine. In fact, he denied doing so. It is unclear why the instruction was even given since the issue of whether Nelson was authorized to deliver cocaine was never raised nor addressed at trial. Nelson's assertion that the in-struction created an impression the court had already determined Nelson had delivered cocaine is pure speculation. We do not view the instruction as having been necessary in this case. However, giving the instruction, even if erroneous or unnecessary, was harmless because the question of Nelson's authority to deliver was not at issue in the trial. *See McCleskey v. Kemp,* 753 F.2d 877 (11th Cir.1985). Should that issue be raised at the new trial dictated by this opinion, giving the instruction would, of course, have to be reconsidered.

### III

### Admission of Evidence

■ Nelson objected to introduction of much of the evidence that was discovered during the search of his house. This evidence consisted of items such as unidentified white crystalline powders that were not cocaine, magazines with pages cut out, including a magazine with a cut-out page that matched the bindle containing the cocaine delivered to McCarthy, other prefolded bindles with identifying numbers written on them, a jar of "Mannitol," which is a laxative often used to dilute cocaine, the "hot-box," a scale, books on cocaine, and a radio set to the frequency used by the narcotics officers.

Nelson objected to the introduction of these items because of an alleged lack of foundation showing that the items were used for cocaine dealing. Nelson theorizes that since the items could be used to prepare cocaine for distribution, the jury could conclude that he must have been guilty of generally dealing in cocaine. Nelson again cites *State v. Newman, supra,* as support for this assertion. Our previous discussion in Part II, on the drug paraphernalia instruction, applies equally to Nelson's present argument regarding the admission of the challenged evidence.

Here Nelson was not charged with the paraphernalia violation. The testimony offered at Nelson's trial was that the items *could be* used for drug related purposes. The evidence was clearly relevant to show, if nothing more, that Nelson had the ac-

coutrements necessary to deal cocaine. Thus the trial court did not err in admitting the evidence.

## IV

### Sufficiency of the Evidence

As Nelson's last assertion of error, he contends that the evidence at trial did not support the jury's verdict. In light of our holding on the jury instructions which requires a new trial, we do not reach this issue.

The judgment of conviction is reversed with direction for a new trial.

BURNETT and SWANSTROM, JJ., concur.

## ADDENDUM

### On Denial of Petition for Rehearing

WALTERS, Chief Judge.

Appellant has petitioned for a rehearing, questioning some factual statements made in the Court's opinion and reiterating his assertion that an aiding and abetting instruction should not have been given in this case. With respect to the factual questions, we have reviewed the record and we find no reason to change the language of our opinion.

The aiding and abetting question appears to arise from uncertainty regarding the "delivery" that constituted the crime charged. It will be recalled that Nelson allegedly furnished the controlled substance to O'Neil, who in turn presented it to McCarthy, who then sold it to an informant. The prosecutor's information did not specify the person to whom Nelson allegedly delivered the substance. In argument to the jury, the prosecutor stated that the "delivery" was from Nelson to O'Neil. However, on other occasions, the prosecutor referred to O'Neil as a "middleman," inferring that the "delivery" was to McCarthy or even, perhaps, to the informant.

On remand, the trial court is directed to ascertain which theory of "delivery" the state intends to advance. Having deter-

mined the scope of the crime charged, the court then can determine whether that crime involved any third parties whom Nelson allegedly might have aided or abetted.

BURNETT and SWANSTROM, JJ., concur.